**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 97-CA-00183-SCT**

*KATINA LEWIS, NATURAL MOTHER AND NEXT*
*FRIEND OF DESTINY BOWIE LEWIS AND*
*DONNETTA NICOLE BOWIE, MINORS*

*v.*

*ALLSTATE INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/97 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DALE HUBBARD |
| ATTORNEY FOR APPELLEE: | JOHN BRADY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 12/03/98 |
| MOTION FOR REHEARING FILED: | 12/16/98 |
| MANDATE ISSUED: | 4/22/99 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. In this case, Katina Lewis, the natural mother and next friend of Destiny Bowie Lewis and Donnetta Nicole Bowie, minors (Lewis), seeks the reversal of the circuit court determination that Aaron Thompson has no coverage under his parents' homeowner's insurance policy for the wrongful death lawsuit filed by Lewis against Aaron Thompson, Shannon Michael Green and Tyrone Wilson and that Allstate Insurance Company (Allstate) Aaron Thompson, Green and Wilson negligently caused the death of Donnell Bowie by throwing molotov cocktails in a house where Bowie slept.

¶2. Upon careful review, we hold that pursuant to the policy under review in this particular case, Aaron Thompson's intent to cause property damage was sufficient to trigger the intentional acts exclusion within the insurance policy. Because there is no genuine issue of material fact as to the intent of the insured, Aaron Thompson, summary judgment was proper. Accordingly, we affirm the circuit court below.

**I. BACKGROUND**

¶3. Allstate issued homeowner's policy No. 02007637 to Stanley and Jacqueline Thompson on September

9, 1992. At the time, the Thompsons resided in Chicago, Illinois. Aaron Thompson is the son of Stanley and Jacqueline Thompson, and at the time of the actions that are the basis of the wrongful death lawsuit brought by Lewis, Aaron was a student at Jackson State University in Jackson, Mississippi.

¶4. On August 28, 1993, Aaron Thompson, Shannon Michael Green and Tyrone Wilson were apparently involved, in some fashion, in an altercation at a local nightclub in Jackson, Mississippi with Maury Richardson and others. Thompson, Green and Wilson went to 1313 Barrett Avenue, the residence of Richardson. Thompson drove the vehicle, while Green and Wilson assembled "molotov cocktails" or firebombs.

¶5. Thompson, Green and Wilson alleged that they all believed that Richardson would not be at home and that they assumed that no one else was at Richardson's home. Upon arriving at Richardson's residence, Green and Wilson broke a window of the house, threw the "molotov cocktails" into the bedroom they believed belonged to Maury Richardson, and returned to the vehicle where Aaron Thompson waited. The three fled the scene, with Thompson driving.

¶6. The molotov cocktails caused a fire in the residence. However, unknown to Thompson, Green or Wilson, Donnell Bowie was sleeping in another bedroom of the residence at 1313 Barrett Avenue. As a result of the fire, Bowie died of smoke inhalation. Bowie left surviving him a minor daughter, Destiny Bowie Lewis, and and unborn daughter, Donnetta Nicole Bowie, with whom Bowie's girlfriend Katina Lewis was pregnant at the time of Bowie's death.

¶7. Subsequently, Thompson, Green and Wilson were arrested an charged with capital murder. Green pleaded guilty to charges of arson and manslaughter. Wilson was tried and found guilty of manslaughter and arson. Thompson pleaded guilty to accessory after the fact of murder. On September 2, 1994, Lewis filed her wrongful death lawsuit against Green, Wilson and Thompson, alleging that the three men were negligent in assuming that the residence in question was unoccupied when the firebombs were thrown.

¶8. Stanley and Jacqueline Thompson made demand upon Allstate to defend and indemnify Aaron Thompson against the wrongful death lawsuit under the terms of the homeowner's policy. Allstate proffered a defense for Aaron Thompson but reserved the right to deny coverage. Allstate then filed its Complaint for Declaratory Judgment.

¶9. After filing the complaint for declaratory judgment, Allstate moved for summary judgment, asserting that three different exclusionary provisions of the homeowner's policy are applicable to Lewis's claim against Aaron Thompson: the criminal acts exclusion; the automobile use exclusion; and the intentional acts exclusion. Granting summary judgment to Allstate, the trial court ruled that the intentional acts exclusion precludes coverage for Thompson and ruled that Allstate does not have a duty to defend Aaron Thompson or indemnify him for any verdict rendered against him in the wrongful death action. It is from this finding that Lewis appeals, asking 1) whether the trial court erred in interpreting the intentional acts exclusion of the policy to apply to the facts of this case and 2) whether the trial court erred in granting summary judgment to Allstate Insurance Company based upon the intentional acts exclusion of its homeowner's policy.'

¶10. The intentional acts exclusion is contained on page 23 of the policy, under "Section **II-- FAMILY LIABILITY** AND GUEST **MEDICAL PROTECTION Coverage X Family Liability Protection":**

    **Losses We Do Not Cover:**

**1. We** do not cover bodily **injury or property damage resulting from:**

(a) An act or omission intended or expected to cause **bodily injury or property damage.** This exclusion applies even if the bodily injury **or property damage** is of a different kind or degree, or is sustained by a different person or property, than that intended or expected;

## II. INTERPRETATION OF EXCLUSIONARY CLAUSE

¶11. Lewis argues that the trial court erred by finding that the intentional acts exclusion[1] was applicable. Of course, Allstate argues that the intentional acts exclusion is applicable. This Court has not yet determined whether an exclusionary clause for bodily injury or property damage resulting from an act intended or expected to cause bodily injury or property damage should apply when the bodily injury results from property damage. Accordingly, we will resolve this appeal pursuant to the Mississippi cases that exist. To the extent that they are useful in the process of rendering a decision, we will look to cases from other jurisdictions.

¶12. The interpretation of insurance policy language is a question of law. *Johnson v. Preferred Risk Auto. Ins. Co.,* 659 So. 2d 866, 871 (Miss. 1995). Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Paul Revere Life Ins. Co. v. Prince,* 375 So. 2d 417,418 (Miss. 1979). Under Mississippi law, ambiguous and unclear policy language must be resolved in favor of the insured. *Harrison v. Allstate Ins. Co.,* 662 So. 2d 1092, 1094 (Miss. 1995). Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *Nationwide Mutual Ins. Co. v. Garriga,* 636 So. 2d 658, 662 (Miss. 1994). In Mississippi, "[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." *Coleman v. Sanford,* 521 So. 2d 876, 878 (Miss. 1988).

¶13. Lewis argues that the policy in this case should be read to exclude coverage for bodily injury resulting from an act or omission intended or expected to cause bodily injury and to exclude coverage for property damage resulting from an act or omission intended or expected to cause property damage. However, according to Lewis, the exclusionary provision does not apply to a claim for bodily injury that results from an act intended or expected to cause only property damage. We disagree with Lewis's construction. Parsing the language as Lewis suggests does not follow from a normal reading of the policy. Further, it does not require the policy to be construed broadly. The intent of the policy language is not ambiguous.

¶14. This Court has previously addressed whether an intentional acts exclusion precluded coverage when an insured shot an individual and claimed that the shooting was not intentional. *Southern Farm Bureau Cas. Ins. Co. v. Allard,* 611 So. 2d 966 (Miss. 1992). In *Allard,* the personal injury suit was resolved prior to the suit for declaratory judgment. *Id.* at 967. The jury found that Allard, the insured, did not intend to shoot Rowland, the victim. The homeowner's policy covering Allard contained an exclusion to liability coverage stating that coverage "does not apply to bodily injury or property damage which is expected or intended by the insured." *Id.* at 968. The Court noted that under Mississippi law, "'[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it.' " Id. (quoting *Coleman*, 521 So. 2d at 878). Without determining whether the policy language was ambiguous, the Court relied on the jury's conclusion that, based on the evidence, Allard did not intend to shoot or hit Rowland; rather, Allard only intended to stop Rowland by shooting in front of him. *Id.* at 968-69.

¶15. As to whether the particular exclusionary provision in question applies to exclude coverage under the scenario in question, i.e. where the insured intended to cause property damage only, but his conduct ultimately resulted in bodily injury, this Court has not been presented with such an issue. Accordingly, we turn to other jurisdictions for comparable treatment of this particular issue.

¶16. Our research reveals only one case with facts like those under review here. ***Michigan Millers Ins. Co. v. Anspach,*** 672 N.E.2d 1044 (Ohio Ct. App. 1996). In ***Anspach,*** the children of the insured planned to burglarize the home of one Judith Simpson and to conceal the burglary by setting fire to the house. ***Id.*** at 1043. The juveniles believed that the house would be unoccupied that night. ***Id.*** at 1044. Five of the juveniles, including the children of the insured, agreed to act as lookouts and knew of the plan to set the house on fire. ***Id.*** Two other juveniles broke into the house and stole goods. One of these juveniles poured gasoline around the floor of the kitchen, but the other juvenile noticed that Simpson was asleep in the living room of the house. The former juvenile, after being asked about the people in the house," lit the fire anyway. ***Id.*** Simpson was injured in the fire; her daughter Amanda, who was also asleep in the house at the time, died. Id.

¶17. The trial court declared that the insurer had no obligation to defend or indemnify Anspach for the intentional conduct of his children. The Ohio Court of Appeals reversed. The main feature of the court's analysis was that it relied on principles of insurance law instead of principles of criminal law. ***Id.*** at 1046. The policy in question stated "Medical Payments to Others do not apply to bodily injury or property damage: a. which is expected or intended by the insured." ***Id.***

¶18. The ***Anspach*** court noted a previous holding of the Ohio Supreme Court that 'i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended.' ***Id.*** at 1047 (quoting *Physicians Ins. Co. v. Swanson, 569* N.E.2d 906, 910-11 (Ohio 1991)). The court of appeals concluded that based on the record, the juveniles seeking coverage did not expect the house to be occupied when they started the burglary plan and did not know that the house was occupied until after the fire had been started. ***Id.*** at 1048. The court determined that for the exclusionary clause to apply, the insurer would have to show that bodily injury was reasonably expected based on the actual conduct of the insured (through his sons), noting that the analysis "examines the actual conduct of the insured person rather than the criminal convictions of the insured." ***Id.*** at 1048-49.

¶19. Most significantly, however, the court concluded that *"[i]n determining insurance applicability as this exclusion is written, we cannot transfer the intent of the insured person to injure property to the intent to cause bodily injury." **Id.*** at 1049 (emphasis added). The court, after examining the conduct of the insureds and their actual intentions, found that the policy exclusion precluding coverage for intentional acts was inapplicable. ***Id.***

¶20. The court rejected the claim that the criminal acts of the insureds was inseparable from the injuries and resulting death, noting that the criminal act of the insureds was confined to acting as lookouts and that the exclusion in question precludes coverage when the insured's conduct results in bodily injury that may have been expected from the conduct or intended. Since there was no evidence that the insureds intended or expected the injuries and subsequent death, the exclusion did not apply.

¶21. In ***Prudential Property and Casualty Insurance Co. v. Swindal,*** 622 So. 2d 467,468 (Fla. 1993), the Supreme Court of Florida was faced with a question very similar to the one facing this Court

now: does a homeowners insurance policy's "intentional injury" exclusion clause exclude coverage for bodily injuries sustained where the insured committed an intentional act intending to cause fear, but bodily injuries may have been caused accidentally and were not expected or intended by the insured to result? The *Swindal* case involved an allegedly accidental shooting, and Prudential argued that coverage was excluded. However, the Supreme Court of Florida found that the policy, which excluded coverage for "bodily injury. . . which is 'expected or intended by the insured,'" did not specifically "exclude coverage for injuries caused by negligent or otherwise unintentional acts because such injuries would not be expected or intended by the insured." *Id.* at 472. Accordingly, the court concluded coverage would be available if the fact finder determined that the insured did not intentionally fire the gun. *Id.* at 473.

¶22. The cases referred to above must be distinguished by the language used in the exclusionary clauses of the policies therein. None of them is phrased quite like the exclusion under review. The following is a clearer reading of what the exclusionary clause under review actually provides: coverage for personal liability does not extend to the insured's acts that caused bodily injury or property damage, if the insured expected or intended them to cause bodily injury or property damage. Accordingly, Allstate argues that because Thompson intended to cause property damage, coverage should not extend to bodily injury resulting from that property damage. The threshold question, therefore, is whether, pursuant to this policy, Thompson's intent to cause the property damage is sufficient to trigger the exclusion, despite Thompson's lack of intent to cause bodily injury. Under a strict reading of the policy, we answer in the affirmative.

¶23. The Ohio Court of Appeals in *Anspach, supra,* rejected the notion of transferring intent in this manner. However, the policy in that case was actually ambiguous as applied to the facts; it only provided that payments to others did not apply to bodily injury or property damage which was expected or intended. Such language would clearly resolve a case in which expected or intended property damage led to property damage, or expected or intended bodily injury led to bodily injury. However, it is fruitless to refer to such language in a hybrid case, such as this one. Accordingly, and correctly, the Ohio Court of Appeals construed the language liberally in favor of the insured. Similarly, the cases cited by the appellant feature the use of such language. *See Anspach, supra; Allard, supra.*

¶24. To be certain, if ambiguity existed in a policy, the rationale employed by the Florida Supreme Court in *Swindal* would be applicable. Tort law principles should not dictate judicial construction of insurance policies, which are contracts of adhesion. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties, with any ambiguities interpreted liberally in favor of the insured. Accordingly, intentional act exclusions should be limited to the express terms of the policies and should not exclude coverage for injuries more broadly deemed under tort law principles to be consequences flowing from the insured's intentional acts.

¶25. Nonetheless, no such ambiguity exists in the policy under review. As such, this case cannot be aligned with cases that conclude that some type of bodily injury is so substantially certain to occur during the commission of crimes like armed robbery that the law will infer an intent to injure on behalf of the insured actor without regard to his claimed intent, or those cases which determine that intent to harm may be presumed in cases of sexual abuse without regard to the claimed intent (or lack thereof) of the insured actor. Those cases merely mean that an intent to injure is inherent in acts like armed robbery, assault, or sexual abuse.[2] Due to the clarity of the policy under review, this Court does not pass upon whether the intent to cause property damage can be transferred to the intent to cause bodily injury. Similarly, we make no judgment regarding the public policy of providing insurance coverage in cases where intentional conduct

causes unintended results.

¶26. We take this opportunity to state that if an insurance company can conduct a declaratory action regarding coverage prior to resolution of an underlying wrongful death trial, then the insureds and third party beneficiaries should be able to raise the coverage question in the underlying lawsuit as well. Pursuant to our rules of civil procedure, a hearing to determine coverage may be conducted if necessary. *See* Miss. R. Civ. P. 57 cmt. (recognizing that a plaintiff may ask for a declaratory judgment either as his sole relief or in addition or auxiliary to other relief). Such reviews of insurance contracts do not involve the jury and are often cursory. Accordingly, if a question of insurance coverage exists, a party should be able to bring the insurer into a lawsuit and have the coverage question resolved by the judge. It should be noted that this does not mean that a party can mention insurance before a jury, as that rule still holds in this state. ***West Cash & Carry Bldg. Materials of McComb, Inc. v. Palumbo,*** 371 So. 2d 873, 876 (Miss. 1979). This procedure simply promotes judicial economy by allowing coverage questions to be resolved at the same time as an underlying lawsuit; it does not allow the question to go to the jury except by previous rules in our decisions. *See, e.g., **Chilcutt v. Keating,*** 220 Miss. *545, 551,* 71 So. 2d 472,474 (1954)(declining to order mistrial when both plaintiff and defendant conceded factually the protections of insurance) ***Mississippi Ice & Util. Co. v. Pearce,*** 161 Miss. *252,* 134 So. 164, 167 (1931 )(declining to order mistrial when defense counsel has elicited a response from a witness concerning insurance). Therefore, we find that the trial court did not err in interpreting the intentional acts exclusion of the policy.

### III. PROPRIETY OF SUMMARY JUDGMENT

¶27. Lewis also argues that summary judgment was not appropriate because the intent of Thompson was only to cause property damage and a genuine fact issue as to his intent exists. Lewis argues that Allstate offered no evidence to establish that Thompson expected or intended to cause bodily injury to Bowie.

¶28. As a court of appeals, this Court conducts a de novo review of decisions by lower courts to grant summary judgment. ***Travis v. Stewart,*** 680 So. 2d 214, 216 (Miss. 1996). In conducting a de novo review, we analyze all affidavits, admissions in pleadings, interrogatory answers, depositions and other matters of record and consider all such evidence in the light most favorable to the party against whom the motion for summary judgment was made. ***Yowell v. James Harkins Builder, Inc.,*** *645* So. 2d 1340, 1343 (Miss. 1994). If in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be upheld; otherwise, we are compelled to reverse. ***Id.***

¶29. In insurance cases, summary judgment is improper where there exist issues of fact regarding coverage. ***Johnson,*** 659 So. 2d at 870. The relevant question here is one of intent. It is agreed by both parties that Thompson's actions were done with the intention or expectation of causing property damage to the residence at 1313 Barrett Avenue. Lewis argues that because Allstate offered no evidence to establish that Thompson actually expected or intended to cause bodily injury to Donnell Bowie, a factual question as to Thompson's intent exists. In fact, Thompson's answer to the complaint indicates that he did not expect or intend to cause bodily injury.

¶30. Nonetheless, the policy, as written, only requires that the insured intended or expected property damage which resulted in property damage or bodily injury for the exclusionary clause to apply. Normally, Allstate would have to show that Thompson intended the property damage, or expected that property damage was substantially certain as a result of his actions. However, Thomspon's admission (and Lewis's assent to that admission) that he intended to, or at least expected that the actions by Green and Wilson

would, cause property damage, satisfies Allstate's burden and is sufficient to invoke the exclusion. Because of the language of the policy, Thompson's intent regarding bodily injury is irrelevant. Accordingly, since the question of intent of the insured is settled, summary judgment was proper.

## IV. CONCLUSION

¶31. The circuit court did not err in its interpretation of the intentional acts exclusion within the Thompsons' homeowner's policy with Allstate. Further, summary judgment for Allstate was proper. Accordingly, the circuit court's decision below is affirmed.

¶32. **AFFIRMED.**

**ROBERTS, SMITH AND MILLS, JJ., CONCUR. PITTMAN, P.J., AND WALLER, J., CONCUR IN RESULT ONLY. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. PRATHER, C.J., NOT PARTICIPATING.**


**BANKS, JUSTICE, DISSENTING:**


¶33. Because I cannot agree with the majority's holding that the exclusionary provisions of the policy are unambiguous, I dissent.

¶34. Insurance policies are contracts of adhesion and as such ambiguities are to be construed liberally in favor of the insured and against the insurer. *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, No. 96-CA-00136-SCT, 1998 WL 240158, at *2 (Miss. May 14, 1998). *See also United States Fidelity & Guar. Co. v. Ferguson*, 698 So. 2d 77, 80 (Miss. 1997) (holding that because contracts for insurance are adhesion contracts Court must protect insureds). An ambiguity exists in an insurance policy where the provision is subject to more than one reasonable interpretation. *J & W Foods Corp.*, 1998 WL 240158, at *3. "If there is an ambiguity within a policy of insurance, then the intention of the parties to the insurance contract should be determined based upon what a reasonable person placed in the insured's position would have understood the terms to mean." *Id.*

¶35. The clause in question is:

**Losses We Do Not Cover:**

1. **We** do not cover **bodily injury** *or* **property damages** resulting from:

(a) An act or omission intended or expected to cause **bodily injury** *or* **property damages**. This exclusion applies even if the **bodily injury** *or* **property damage** is of a different kind or degree, or is sustained by a different person or property, than that intended or expected; [Italics supplied]

¶36. Here the problem is the disjunctive nature of the exclusionary provision. The explanatory "even if" second sentence of 1(a) in the policy language should have been expanded to say that the exclusion applies even if property damage was intended and bodily injury resulted and vice versa if indeed that was what was meant as Allstate now contends.[(3)] But because it was not, the policy exclusion could reasonably be

interpreted as having more than one meaning.

¶37. The Lewis' interpretation is that it applies where property damage is intended even if the property damage is of a different kind or degree or sustained by different property and it applies similarly where bodily injury is intended and the bodily injury is of a different kind or to a different person than intended. It follows, in their view, that it does not apply where, as here, property damage was intended and bodily injury occurred.

¶38. The Lewis' interpretation of the exclusionary clause is just as reasonable as that asserted by Allstate. In light of the fact that the policy is subject to more then one interpretation it is ambiguous and should have been construed in favor of the insureds. Therefore, I would reverse and remand this case to the trial court for further proceedings.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. It is noted that the circuit court did not rule on whether the remaining two exclusions asserted by Allstate, a criminal acts exclusion and an automobile use exclusion, were applicable. Accordingly, neither exclusion is before this Court for review.

2. there is some inherent risk of physical injury in arson, that risk may not always rise to the level of substantial certainty. While fire may cause extreme risk to certain lives (like firemen) and property inherently, there may only be an inherently normal risk to others. Whether an insured expected with substantial certainty that bodily harm or property damage would result would be a determination for a jury.

3. Another option would be to say that the policy does not cover any damage (leaving out the descriptors) resulting from an act or omission intended to cause bodily injury or property damage, even if the damage (again leaving out the descriptors) is of a different kind or degree than that intended (leaving out the disjunctive person or property once again).