**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 00-60533**

**AMERICAN FIRE & INDEMNITY COMPANY,**

Plaintiff-Counter Defendant-Appellee,

versus

**SCOTTSDALE INSURANCE COMPANY,**

Defendant-Counter Claimant-Appellant.

**Appeal from the United States District Court**
**for the Northern District of Mississippi**
**(1:98-CV-258-S-D)**

**June 18, 2001**

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

PER CURIAM:[2]

At issue is which insurance policy covers a wrongful death claim against the insured for a single-vehicle accident allegedly caused by the insured's negligence and resulting in the death of his wife: the personal automobile insurance policy, with an uninsured motorist endorsement, issued by American Fire & Indemnity Company, or the personal umbrella liability policy issued by

---

[1]Circuit Judge of the Ninth Circuit, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should *not* be published and is *not* precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Scottsdale Insurance Company. Because we conclude that the insured's vehicle is *not* an uninsured motor vehicle under Mississippi law, we **AFFIRM**.

I.

Dorothy V. Taylor died as a result of injuries sustained in a one-vehicle accident while a passenger in a vehicle owned and operated by her husband, Calvin E. Taylor. Her wrongful death beneficiaries sued Taylor, claiming his negligence caused the death.

At the time of the accident, Taylor's vehicle was covered by two insurance policies: a personal automobile policy issued by American Fire and a personal umbrella liability policy issued by Scottsdale. The American Fire policy provided liability coverage with bodily injury limits of $250,000 per person and $500,000 per occurrence, which satisfied Scottsdale's basic underlying policy requirements for issuing its umbrella policy.

However, the American Fire policy excluded liability coverage "for bodily injury to [the insured] *or any family member*". (Emphasis added.) The parties agree that, because the decedent was within the policy definition of "family member", the American Fire policy does *not* provide coverage for her injuries.

The American Fire policy also provided uninsured motorist coverage, pursuant to the Mississippi Uninsured Motorist Act, *see* MISS. CODE ANN. §§ 83-11-101 *et seq.*, with per person bodily injury

2

limits of $250,000. Because three vehicles were listed in the policy, American Fire concedes that the stacked coverage was $750,000 per person. *See **United States Fidelity & Guar. Co. v. Ferguson***, 698 So. 2d 77, 79 (Miss. 1997) ("stacking is so firmly imbedded in Mississippi uninsured motorist law that it has become a positive gloss upon the Uninsured Motorist Act" (internal quotation marks and citation omitted)).

As noted, Taylor's vehicle was also covered by a personal umbrella liability policy issued by Scottsdale, with limits of $1 million per accident. Scottsdale's policy provides "*[e]xcess insurance* over and above the amounts provided for in basic policies" (excess coverage provision) and covers "*[d]amages*, in excess of $1,000, arising out of claims ... *which are either excluded or not covered* under ... basic policies" (gap-filling provision). (Emphasis added.)

Although the insurers disputed coverage, they settled with the decedent's beneficiaries and reserved the right to litigate between themselves the liability for the claim. American Fire brought a declaratory judgment action, and Scottsdale counterclaimed; each sought an adjudication that the other was liable. On cross-motions for judgment on the pleadings, and by a thorough and well-reasoned opinion, the district court concluded Scottsdale was liable under its gap-filling provision.

II.

A judgment on the pleadings is reviewed *de novo*. *E.g., **Harris v. Philip Morris Inc.***, 232 F.3d 456, 458 (5th Cir. 2000). And, the interpretation of an insurance policy is a question of law. *E.g., **Lewis v. Allstate Ins. Co.***, 730 So. 2d 65, 68 (Miss. 1998). Unambiguous policies are enforced, of course, according to their written terms. *E.g., **Sennett v. United States Fidelity & Guar. Co.***, 757 So. 2d 206, 212 (Miss. 2000). On the other hand, ambiguous provisions that limit or exclude coverage are construed in favor of the insured. *E.g., **Lewis***, 730 So. 2d at 68. Based upon two provisions in its policy, Scottsdale asserts it is *not* liable.

First, in its exclusions section, the Scottsdale policy states it will *not* "drop down to assume the obligations of any basic policy if any basic policy is *not collectible* for any reason, *including but not limited to* the insolvency of the company by whom the basic policy was issued" (drop down provision). (Emphasis added.) According to Scottsdale, its policy does *not* drop down to assume American Fire's basic policy obligations because, pursuant to American Fire's family member exclusion, the basic policy is *not* collectible.

Second, the Scottsdale policy states that, if, other than the basic policies, there is *any other collectible insurance* covering the claim, then that other insurance pays first, and Scottsdale's

4

policy is in excess of it. According to Scottsdale, American Fire's uninsured motorist coverage is such "other collectible insurance" which must first be exhausted.

American Fire responds: the claim is excluded under its policy; Scottsdale's $1 million liability limit exceeds American Fire's $750,000 uninsured coverage; therefore, Taylor's vehicle is *not* "uninsured" under Mississippi law; accordingly, the claim is *not* covered by American Fire's uninsured motorist endorsement; and, as a result, the claim is covered under the gap-filling provision of the Scottsdale policy. In addition, American Fire contends: interpreting Scottsdale's drop down provision, as Scottsdale suggests, would completely vitiate the gap-filling coverage of its policy; and, even if American Fire's uninsured coverage applies, because it does *not* cover the same property, risk, and interest as Scottsdale's liability coverage, it *cannot* be considered "other collectible insurance".

Obviously, in order for American Fire's uninsured coverage to apply, Taylor's vehicle must be an "uninsured motor vehicle" as defined by the Mississippi Uninsured Motorist Act. ***Wickline v. United States Fidelity & Guar. Co.***, 530 So. 2d 708, 712 (Miss. 1988) (citing MISS. CODE ANN. § 83-11-103(c)). Only two of the five definitions in MISS. CODE ANN. § 83-11-103(c) bear on this issue.

First, as defined by subpart (c)(ii), an uninsured vehicle is "[a] motor vehicle as to which there is [bodily injury liability]

5

insurance in existence, but the insurance company writing the same has legally denied coverage thereunder". Again, and as the parties concede, American Fire's policy provides liability insurance, but coverage under that policy has been properly denied pursuant to its family member exclusion. *See* **Thompson v. Mississippi Farm Bureau Mut. Ins. Co.**, 602 So. 2d 855, 857 (Miss. 1992) (upholding family exclusion clause). As a result, Scottsdale's gap-filling provision comes into play, and, thus, Taylor's vehicle is *not* uninsured.

The second possible basis for concluding Taylor's vehicle is uninsured is found in subpart (c)(iii)'s definition of an uninsured motor vehicle: "when the liability insurer of such vehicle [(here, Scottsdale)] has provided limits of bodily injury liability for its insured *which are less than* the limits applicable to the injured person [(here, the decedent)] provided under his uninsured motorist coverage [(here, provided by American Fire)]". (Emphasis added.) Accordingly, to determine whether Taylor's vehicle is uninsured under this definition, we must compare the applicable policy limits. **Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.**, 614 So. 2d 918, 920 (Miss. 1992). As noted, the Scottsdale policy affords liability coverage of $1 million, whereas American Fire's aggregate uninsured coverage totals $750,000. Because Scottsdale's coverage is *not* less than American Fire's uninsured coverage, Taylor's vehicle is *not* uninsured under the definition in subpart (c)(iii).

Scottsdale's drop down provision does *not* apply. Again, that provision excluded assuming a basic-policy-obligation *if* the policy is "*not* collectible for any reason". (Emphasis added.) If "not collectible", as employed in that provision, is interpreted to mean excluded or *not* covered, as Scottsdale suggests, this would nullify Scottsdale's gap-filling provision (payment of certain damages for claims *excluded or not covered* under basic policy). It goes without saying that, whenever possible, operative effect must be given to every provision of an insurance policy. *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998); *see also Mission Nat'l Ins. Co. v. Duke Transp. Co.*, 792 F.2d 550, 553 (5th Cir. 1986) (distinguishing between "collectible" and "covered"). (Because Taylor's vehicle is *not* uninsured, we need *not* reach Scottsdale's contention that American Fire's uninsured motorist coverage is "other collectible insurance".)

Moreover, the purpose of uninsured motorist laws is to protect persons injured as a result of the negligence of financially irresponsible drivers. *Rampy v. State Farm Mut. Auto. Ins. Co.*, 278 So. 2d 428, 432 (Miss. 1973). This purpose would *not* be served because, by purchasing both a personal automobile policy and a personal umbrella liability policy, Taylor was anything but financially irresponsible.

In sum, Taylor's vehicle is *not* an uninsured motor vehicle. Therefore, the claim is covered *not* by American Fire's uninsured motorist endorsement but by Scottsdale's gap-filling provision.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

8