# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00393-COA

**KATHERINE THOMPSON**                                                      **APPELLANT**

**v.**

**STATE FARM FIRE AND CASUALTY COMPANY**                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2024 |
| TRIAL JUDGE: | HON. WILLIAM HUNTER NOWELL |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | DANA J. SWAN OLIVER EARL CLARK JR. |
| ATTORNEY FOR APPELLEE: | ROBERT LEWIS MOORE |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 10/07/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1.     After a motor-vehicle accident between Katherine Thompson and another driver, Jerome Steele, Thompson filed a complaint against State Farm Fire & Casualty Company (State Farm), her insurer, seeking uninsured motorist (UM) benefits under her policy.[1]  At

---

[1] Mississippi Code Annotated section 83-11-101(1) (Rev. 2022) provides that unless rejected by the named insured, all automobile liability policies must "contain[] an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death . . . from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law . . . ."  Miss. Code Ann. § 83-11-101(1).  Subsection 83-11-101(2) further provides for recovery "for property damage" by the insured.  Miss. Code Ann. § 83-11-101(2).  Mississippi Code Annotated section 83-11-103(c) (Rev. 2022), in turn, defines an "uninsured motor vehicle" to mean (in pertinent part)

trial, the Bolivar County Circuit Court granted State Farm's motion for a directed verdict because Thompson had not presented any evidence that Steele was an uninsured motorist. Thompson filed a motion for a new trial, which the court denied. Thompson appeals the judgment, and we affirm.

**Facts and Procedural History**

¶2. Thompson was involved in a two-car motor-vehicle accident with Steele on April 2, 2021. Steele's father was the owner of the vehicle. After the accident, Thompson's attorney contacted her insurer State Farm and offered to settle the UM claim for $50,000, the total available limits of UM benefits under her policy.[2] On April 5, 2022, State Farm counter-offered to settle Thompson's UM claim for $25,000.

¶3. Thompson rejected State Farm's offer and filed a complaint with the circuit court against State Farm on June 17, 2022. Thompson asserted in her complaint that Steele was "an uninsured/under-insured driver"; so she "was covered" under her insurance policy's UM limits. In its answer, State Farm "denie[d] that uninsured motorist coverage is applicable in this case." State Farm further asserted that Thompson "has sued for an amount potentially in excess of the limits of [UM] coverage afforded to its insured, and, in no event would the

as "(i) A motor vehicle as to which there is no bodily injury liability insurance; or . . . (iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage." Miss. Code Ann. 83-11-103(c)(i) & (iii).

[2] Although Thompson's insurance policy is not in the court record, it is not disputed that Thompson had UM coverage under her policy's terms.

plaintiff be entitled to recover an amount in excess of the policy limits."

¶4.    On February 7, 2024, a pre-trial statement signed by the trial judge and the attorneys for both parties was entered. Item 8(C) of the statement identified "[t]he applicability of the uninsured motorist coverage" as a contested issue of fact. Both Thompson and State Farm listed Steele as a possible ("may call") lay witness, and he was issued a subpoena to testify.

¶5.    A one-day trial was held on February 22, 2024. At the start of the trial, it was noted that Steele was in attendance, but Thompson's attorney told the court that Steele was not a witness. Only Thompson and her treating chiropractor, Dr. Joy Long, D.C., testified about Thompson's injuries.

¶6.    After the plaintiff rested her case, State Farm moved for a directed verdict on the basis that Thompson had failed to make a prima facie case that Steele was an uninsured driver, arguing:

> My client has liability if, but only if, Jerome Steel[e] blew the stop sign while he had available to him liability insurance in an amount less than the [UM] coverage available to [Thompson]. Have you heard word one about [Steele's] insurance status, his liability status, my client's [UM] limits for Ms. Thompson?
>
> And the answer, of course, is, no, you haven't. . . . I know that the accident report, they had Progressive Insurance. I know because I've seen the Progressive policy, and he's an insured, under a Progressive policy issued through his father.
>
> And, yet, you haven't heard a word of that, so this is an argument to you.

The subject State Farm insurance policy was not admitted into evidence or referenced by the plaintiff, and there was no evidence presented regarding any liability coverage for Steele's

3

vehicle. After deliberation, the circuit court concluded that "without some proof . . . that UM coverage applies to this case, as much as it pains me to do, I don't think I have [a] choice but to direct the verdict in favor of the defense." The court granted State Farm's motion and entered an order on February 27, 2024, dismissing the complaint with prejudice.

¶7. On March 8, 2024, Thompson filed a motion for a new trial pursuant to Mississippi Rules of Civil Procedure 59 and 60. She argued the circuit court's granting of a directed verdict was a clear error of law because a reasonable juror could have inferred Steele was uninsured based on her testimony that State Farm had paid ($5,000) for damage to her vehicle. She also claimed new evidence—that Steele had been issued an insurance policy "that was deemed to be invalid"—showed that Steele was uninsured at the time of the accident. Finally, she noted that prior to trial, the court had determined that it would give State Farm's verdict form, which did not contain any reference to "Steele's status as insured or uninsured." Thompson argued that the jury "should have been presented these facts in accordance with the instruction the Court stated it would give." The circuit court denied Thompson's motion, finding that she "had access" to this "new" evidence "*long before* trial of this case." The court also determined that Thompson failed to meet her burden under Rule 60(b), noting that Thompson "is merely attempting to relitigate an issue, namely the uninsured status of Mr. Jerome Steele."

¶8. Thompson appeals the circuit court's judgment granting the motion for a directed verdict in favor of State Farm and the denial of her motion for a new trial.

4

**Discussion**

**I. Whether the trial court erred by granting State Farm's motion for a directed verdict.**

¶9. Thompson challenges the trial court's judgment granting the motion for directed verdict on appeal. "A motion for a directed verdict made at the end of the plaintiff's case-in-chief, a renewed motion for a directed verdict at the end of all evidence, a request for a peremptory instruction, and a motion for a [judgment notwithstanding the verdict] are all procedural vehicles for challenging the sufficiency of the evidence." *Latham v. Johnson*, 262 So. 3d 569, 581 (¶69) (Miss. Ct. App. 2018). "[I]f the evidence, when viewed in the light most favorable to the plaintiff, points so overwhelmingly in favor of the defendant that reasonable jurors could not have returned a verdict for the plaintiff, we must affirm the trial court's ruling." *Silver Dollar Sales Inc. v. Battah*, 391 So. 3d 845, 851 (¶22) (Miss. Ct. App. 2024). The Mississippi Supreme Court has held that the standard of review for a directed verdict is de novo. *Windmon v. Marshall*, 926 So. 2d 867, 872 (¶20) (Miss. 2006).

> *A. Whether the determination of Steele's status as an insured is a question of fact for the jury.*

¶10. Thompson argues that the circuit court manifestly erred in finding there was not sufficient evidence by which a reasonable jury could infer by a preponderance of the evidence that Steele was uninsured. Her argument is that the determination of whether Steele was insured was a question of law for the court to decide, not a question of fact for the jury.

¶11. Thompson did not assert this argument either at trial or in her motion for a new trial,

5

which procedurally bars this claim from appellate review. *See McNeese v. McNeese*, 119 So. 3d 264, 275 (¶36) (Miss. 2013) ("Issues raised for the first time on appeal are procedurally barred."), *as modified on denial of reh'g* (Miss. Aug. 22, 2013); *cf. Allcock v. Bannister*, 106 So. 3d 790, 797 (¶32) (Miss. 2012) (noting that "the purpose of a motion for a new trial is to give the trial court an opportunity to correct its own errors, or errors that have occurred in the conduct of the trial or proceedings . . ."). Rather, contrary to her argument on appeal, Thompson noted in her motion that *the jury should have been presented* with the question of whether Steele was insured or uninsured (e.g., She argued "a reasonable juror could infer the at-fault driver was uninsured," and "the manifest injustice of taking the question of whether uninsured coverage applied in this matter out of the hands of the jurors."). We therefore find this argument waived.

¶12. Notwithstanding the procedural bar, the Mississippi Supreme Court has recognized that whether a driver is uninsured is an element of proof for the jury to consider; so this argument also is without merit. *See State Farm Mut. Auto. Ins. Co. v. Stewart*, 288 So. 2d 723, 725 (Miss. 1974) (holding that because "there was no competent evidence or any reasonable inference therefrom sufficient *to carry the case to the jury*" that the negligent driver was uninsured, the trial court erred in not sustaining the motion to direct the verdict for the defendant insurer on uninsured-motorist claim (emphasis added)).

¶13. The dissent contends that the issues at trial should have been "separat[ed]"—with the jury determining damages first and then the trial judge "alone" considering the issue of

6

whether UM coverage was applicable.[3]  The dissent also reasons that "there was no mention of insurance, or excess coverage, or UM, or any of that stuff" because "it would have been improper to bring up before the jury."

¶14.    First, at no point in the proceedings did either party argue that the issues should have been separated.  This Court will not find error on matters not presented to the trial court. *Mills v. Nichols*, 467 So. 2d 924, 931 (Miss. 1985).  Nor did the parties raise this argument on appeal.

¶15.    Second, the dissenting opinion fails to note the distinction between first-party coverage claims and third-party coverage claims.  The Mississippi Supreme Court has recognized that "[t]he duty of an insurer to an insured arising out of a first-party insurance claim is different from that arising out of a third-party claim." *Sessoms v. Allstate Ins. Co.*, 634 So. 2d 516, 519 (Miss. 1993).  "Whereas first party coverage obligates the insurer to pay damages claimed by the insured itself, third party coverage obligates the insurer to defend, settle, and pay damages claimed by a third party against the insured." *Pitzer Coll. v. Indian Harbor Ins. Co.*, 447 P.3d 669, 678 (Cal. 2019).  In *Hegwood v. Williamson*, 949 So. 2d 728, 731 (¶6) (Miss. 2007), the supreme court further distinguished these types of claims, holding that a trial court should have severed a plaintiff's "third party tort claim" (against the tortfeasor and her insurer) and the "first party breach of contract claims" against the

---

[3] State Farm stated at trial that there was no question "Steele is at fault for this accident," and the dissent acknowledges that the issue of liability was "uncontested."

7

plaintiff's insurer (the same company) because the claims "involve[d] different factual issues and different legal issues."[4]

¶16.    The dissent discusses two cases in support of separating the issues of damages and coverage.  In *Lewis v. Allstate Insurance Co.*, 730 So. 2d 65, 67-68 (¶¶7-9) (Miss. 1998), an insurer sought a declaratory judgment of whether provisions of the insureds' homeowner policy covered a wrongful-death claim filed against them.  Considering whether the trial court's granting of summary judgment in favor of the insurer was proper, the supreme court reasoned:

> In insurance cases, summary judgment is improper where there exist *issues of fact regarding coverage*. The relevant question here is one of intent. . . . Lewis argues that because Allstate offered no evidence to establish that Thompson actually expected or intended to cause bodily injury to Donnell Bowie, a factual question as to Thompson's intent exists.  In fact, Thompson's answer to the complaint indicates that he did not expect or intend to cause bodily injury.

*Id.* at 71-72 (¶29) (emphasis added) (citation omitted).  Because there was no question of fact (regarding intent) for the jury, the supreme court held summary judgment was proper.  *Id.* at 72 (¶30).

¶17.    The dissent, however, cites dicta from *Lewis* describing what a plaintiff may do in a third-party coverage context, explaining that "if a question of coverage exists, a party should

---

[4] The supreme court stated that the tortfeasor "would be prejudiced if the jury learned of her insurance coverage while it was deciding liability and damages," but the fact that she "had insurance may be relevant to [the plaintiff's] breach of contract and bad faith claims against [her own insurer]."  *Hegwood*, 949 So. 2d at 731 (¶7).

be able to bring the insurer into a lawsuit and have the coverage question resolved by the judge." *See id*. at 71 (¶26).[5] "Such *reviews of insurance contracts* do not involve the jury and are often cursory." *Id*. (emphasis added).[6] This discussion regarding a trial court's determination of policy coverage in a third-party claim was not relevant to the supreme court's disposition in *Lewis*.

¶18.    The other case discussed by the dissent is *Capital City Insurance Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505 (Miss. 2004). Following *Lewis* (and the amendment to Rule 57(b)(2)), a general contractor filed suit against a subcontractor and its insurer for damages. *Id*. at 506 (¶2). The subcontractor filed a counterclaim against the general contractor, and the insurer filed a counterclaim and a cross-claim for declaratory judgment regarding

---

[5] Having resolved the first-party claim, the supreme court "[took] this opportunity to state that if an insurance company can conduct a declaratory action regarding coverage prior to resolution of an underlying wrongful death trial, then the insureds and third party beneficiaries should be able to raise the coverage question in the underlying lawsuit as well." *See Lewis*, 730 So. 2d at 71 (¶26).

*Poindexter v. Southern United Fire Insurance Co.*, 838 So. 2d 964 (Miss. 2003), cited by the dissent without comment, addresses the formalization of *Lewis*'s third-party procedure in Mississippi Rule of Civil Procedure 57(b)(2) (amended in 2000). *Id*. at 967 (¶¶15-16). The supreme court held that the injured party could not join the tortfeasor's insurer when the insurer had not denied coverage. *Id*. at 968 (¶18). The advisory committee note to Rule 57 explains, "Absent extraordinary circumstances, the failure to order separate trials in order to avoid putting the issue of insurance before the jury which tries liability and damages as *between the insured and the injured party* will be deemed an abuse of discretion." (Emphasis added). The instant case is not between an insured and the injured party (third-party claim) but between the insured and her insurer (first-party claim).

[6] *See S. Healthcare Servs. Inc. v. Lloyd's of London*, 110 So. 3d 735, 743 (¶19) (Miss. 2013) ("Interpretation of an insurance policy presents a question of law, which the [appellate c]ourt reviews de novo.").

coverage under the applicable liability policy. *Id.* The subcontractor had included the general contractor as an additional insured under its general liability policy. *Id.* at (¶1). The supreme court ruled that the trial court erred in not bifurcating the trial "as a matter of law" and "first determin[ing] the extent of liability, if any," and then deciding whether the policy provided coverage for "either of its insureds." *Id.* at 511-12 (¶¶16-17). Citing Mississippi Rule of Evidence 411, the supreme court held bifurcation was necessary in that instance to avoid potential prejudice.[7] *Id.* at 512 (¶19). The issue of liability and damages was "unrelated" to the issue of whether the insurer had to provide coverage to either the subcontractor or the general contractor for damages as assessed by the jury. *Id.* at 512 (¶17).

¶19. We find neither of these cases cited by the dissent is applicable to the facts presented here—a first-party claim for UM coverage brought by an insured against her own insurance company,[8] in which the terms of the policy were not contested, and the defendant demanded "a jury . . . to try all issues when joined." As State Farm summarized in opening statements: "One issue is, is [UM] coverage available in this case. The other issue is, *if it is*, to what extent was Ms. Thompson injured. That's the issue. . . . Is it applicable to [UM] coverage, and was she hurt?" (Emphasis added). Thompson's attorney also noted in response to State Farm's motion for a directed verdict, "The contested issues are the nature and extent of the

---

[7] Rule 411 provides in part, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."

[8] "Uninsured motorist coverage is first-party coverage and provides no benefit to the tortfeasor." *Zurich Amer. Ins. Co. v. Goodwin*, 920 So. 2d 427, 439 (¶31) (Miss. 2006).

injuries suffered by Ms. Thompson, the amount of damages being owed to Ms. Thompson, and the applicability of the [UM] coverage," which involved a determination of Steele's status as an uninsured motorist. These two issues concern questions of fact for a jury, not questions of law for the trial judge. *See Black v. Fid. & Guar. Ins. Underwriters Inc.*, 582 F.2d 984, 991 (5th Cir. 1978) (holding that evidence of a tortfeasor's being uninsured was sufficient to create a jury question on the issue).

¶20. Lastly, the dissent's assertion that "there was no mention of insurance . . . or UM" and that it "would have been improper" to do so before the jury is not supported by the record. At the start of trial, the court announced, "We're here in the interest of Katherine Thompson *versus State Farm Fire and Casualty Company*[.]" (Emphasis added). Moreover, during voir dire, Thompson's attorney, Oliver Clark Jr., extensively questioned several venire members about their experiences with filing claims against their insurance companies.

> MR. CLARK: . . . Okay. Now, has anyone ever filed any kind of claim against an insurance company? Let's say a tree fell on your house or you had a slip and fall? Has anyone ever had to file a claim against an insurance company?
>
> . . . .
>
> MR. WILLIFORD: -- I hit a deer with my vehicle and had to file a claim - -
>
> . . . .
>
> MR. CLARK: And were you satisfied with the insurance company's handling of that claim?
>
> MR. WILLIFORD: Yes, sir.
>
> MR. CLARK: Okay. They promptly handled it?

11

MR. WILLIFORD: They did.

. . . .

MR. CLARK: Thank you. Ms. Rocconi, could you tell me about that experience that you had?

. . . .

MS. ROCCONI: . . . I filed a claim when we had the ice storm, but everything was taken care of, so I was satisfied.

. . . .

MR. CLARK: Ms. Grant?

MS. GRANT: Yes. I just had some storm damage on my roof and just filed for that, and I didn't have any issues with the insurance company, nor would it any done -- basically, one way or the another, I could be impartial.

MR. CLARK: Okay. Mr. Melton?

MR. MELTON: The same. It was hail damage to my roof, and insurance fixed it. And I don't have any complaints.

MR. CLARK: And did they promptly fix it?

MR. MELTON: Absolutely.

MR. CLARK: Come down to Ms. -- Mr. Holmes again.

MR. HOLMES: We've been in our house 42 years, so we've had multiple claims.

MR. CLARK: Okay.

MR. HOLMES: And so -- yeah, they fixed it. Everything has been good - -

. . . .

MR. CLARK: Okay. And you've been satisfied with the way they treated you?

MR. HOLMES: Correct.

MR. CLARK: Okay. And what insurance are you with?

MR. HOLMES: State Farm.

State Farm's attorney even explained UM coverage to the venire members, with no objection made by Thompson's attorney.[9] Thus, the jury was made aware that Thompson was insured since the applicability of her UM coverage under her State Farm policy was one of the stated issues at trial. We find the dissent's argument that the issues of damages and applicability of UM coverage should have been separated is not supported by the relevant law, the facts, or the trial strategy of counsel.

> B.     *Whether State Farm waived the "alleged affirmative defense" that uninsured motorist coverage was inapplicable.*

¶21.   Thompson contends that "State Farm's delay in pursuing the alleged affirmative defense that Steele was insured and uninsured motorist coverage was inapplicable constitutes a waiver of this issue." We find no merit to Thompson's argument. As the Mississippi Supreme Court has explained,

---

[9] State Farm's counsel stated that the lawsuit "is pursuant to something called uninsured motorist coverage," and he asked if any members had heard about UM coverage. When several members of the venire raised their hands, counsel for State Farm responded: "Well, uninsured motorist coverage is coverage that you can purchase that will protect you, the purchaser, the insured - - the insured, if you're involved in an accident, and it's the other person's fault, and they have no insurance. Does everybody get that concept?"

13

[a] matter is an "avoidance or affirmative defense" only if it assumes the plaintiff proves everything he alleges and asserts, even so, the defendant wins. Conversely, if, in order to succeed in the litigation, the defendant depends upon the plaintiff failing to prove all or part of his claim, the matter is not an avoidance or an affirmative defense. **A defendant does not plead affirmatively when he merely denies what the plaintiff has alleged**.

*Hertz Com. Leasing Div. v. Morrison*, 567 So. 2d 832, 835 (Miss. 1990) (emphasis added).

State Farm expressly denied in its answer "that uninsured motorist coverage is applicable in this case." This defense required Thompson to prove her claim that Steele was uninsured/underinsured. *See Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1022 (5th Cir. 1978) (holding that "[u]nder Mississippi law[,] a plaintiff has the burden of proving a right to recover under the insurance policy sued on," and "[t]hat basic burden never shifts from the plaintiff"). Moreover, the circuit court noted at trial that the pretrial statement had designated the applicability of uninsured motorist coverage as a contested issue of fact; so the court could not find that State Farm had waived this defense. This issue is without merit.

II.     **Whether the circuit court erred in denying Thompson's motion for a new trial.**

¶22.    "[T]o succeed on a Rule 59(e) motion, the movant must show (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law to prevent manifest injustice." *Liberty Mut. Ins. Co. v. Miss. Transp. Comm'n*, 317 So. 3d 937, 943 (¶15) (Miss. 2021) (quoting *Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 287 (¶11) (Miss. 2012)). In her motion, Thompson argued that "new evidence that was not previously available stating Steele was

14

uninsured" warrants the granting of a new trial. The "evidence" is a letter she received from Progressive Insurance **dated June 2, 2021**, that informed Thompson Progressive "was unable to find valid coverage for this incident[.]" The circuit court determined in its order that the date of the letter "clearly proves" that Thompson "had access to the document . . . *long before* trial of this case[.]"[10]

¶23.    In her posttrial motion, Thompson provided no explanation to the circuit court why this evidence was not discoverable prior to trial. Nor can we find any basis for this argument, as the letter was clearly addressed to Thompson and dated more than two years prior to the trial date.[11] We therefore find no error in the circuit court's denial of her motion on this basis.

¶24.    Thompson also argues that the circuit court's "deciding what instructions will be given before hearing any testimony or receiving any evidence is a clear error of law and contrary to Rule 3.07 of the Uniform Circuit and County Court Rules."[12] Thompson is

---

[10] As previously stated, the trial was held on February 22, 2024.

[11] Furthermore, as this Court noted during oral argument, Steele had been subpoenaed and was present at the trial; so it is unclear how this evidence of whether he had insurance at the time of the accident was undiscoverable since Thompson could have questioned Steele at trial.

[12] Rule 3.07 of the Uniform Civil Rules of Circuit and County Court Practice provides in relevant part:

> At least twenty-four hours prior to trial each of the attorneys must number and file the attorney's jury instructions with the clerk, serving all other attorneys with copies of the instructions. Except for good cause shown, the court will not entertain a request for additional instruction or instructions, which have

15

referring specifically to the defendant's "Jury Verdict Form," which the circuit court had informed the parties (via email the day before trial) that the court would use.[13]

¶25. However, the record does not indicate that Thompson objected to the defendant's proposed instructions;[14] nor did her attorney allege any violation of Rule 3.07 at trial. Also, although Thompson noted in her motion for a new trial that the court had "instructed it would give the Defendant's Verdict Form," she did not assert in her motion the argument before us—that it violated Rule 3.07. "Absent a motion preserving a claim of error[,] we have no ruling of the trial court for review on that particular point." *Colbert v. Colbert*, 403 So. 3d 729, 735 (¶26) (Miss. Ct. App. 2025). Thus, Thornton has waived this argument on appeal. *See Brewer v. Bush*, 350 So. 3d 1133, 1146 (¶34) (Miss. Ct. App. 2022) (finding plaintiff's

---

not been pre-filed. At the conclusion of testimony, the attorneys must select no more than six jury instructions on the substantive law of the case from the instructions prefiled and present them to the judge. The court, for good cause shown, may allow more than six instructions on the substantive law of the case to be presented.

UCRCCC 3.07.

[13] The Jury Verdict Form asked the jury to decide only two issues: (1) whether Steele was liable for Thompson's injuries and (2) if so, the total amount of damages sustained by Thompson. No proposed instructions by either party asked the jury to determine whether Steele was insured. Counsel for State Farm reasoned (during oral argument before our Court) that no such instruction would be necessary: if no evidence were presented that Steele was uninsured, the matter would never go to the jury.

[14] The court's email, which provided the parties with a copy of the court's instructions, noted "that there is no objection to Plaintiff's or Defendant's proposed instructions." At oral argument before this Court, Thompson's attorney claimed that he had objected to the instruction, but no documentation of this objection is contained in the record. He admitted that he made no such objection to the court at the start of trial.

16

failure to object or allege a violation of Rule 3.07 waived her argument that the number of instructions filed by the defendant prejudiced her defense). We find no abuse of discretion in the circuit court's denial of Thompson's motion for a new trial.

**Conclusion**

¶26. Accordingly, we affirm the circuit court's judgment dismissing Thompson's complaint with prejudice.

¶27. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**McCARTY, J., DISSENTING:**

¶28. A trial over un-insured or under-insured motorist coverage involves multiple steps. First, the jury determines fault and damages, if any. After that point, the judge alone—*not the jury*—determines whether there is coverage.[15]

¶29. Here, the insurer admitted the fault of Jerome Steele. However, because the trial was still just in a damages phase before the jury, the question of whether there was applicable coverage—and whether Steele was uninsured—was not yet ripe. Since the trial court got the cart before the horse, we are required to reverse so this trial can proceed to a determination

---

[15] For the former, as described in the parties' pre-trial statement, i.e., "whether or not the plaintiff sustained any injury as a result of the accident, and if so the nature and extent of that injury." And the latter, i.e., the "applicability of the uninsured motorist coverage."

17

of damages, if any, and then to whether coverage attaches.

¶30.    The first thing to remember is that the statutory mandate to offer UM coverage provides a public good. "The purpose of the statute is to provide protection to innocent insured motorists and passengers injured as a result of the negligence of financially irresponsible drivers." *Jones v. S. United Fire Ins.*, 935 So. 2d 1127, 1129-30 (¶13) (Miss. Ct. App. 2006) (quotation marks omitted) (applying Miss. Code Ann. § 83-11-101 (Rev. 1996)). "The intent is to provide the same protection to one injured by an uninsured motorist as that individual would have if injured by a financially responsible driver." *Id*. at 1130 (¶13). So "[t]he provisions of the statute are to be liberally construed to achieve its purpose." *Id*.

¶31.    Another thing is the general ban on a jury hearing information about insurance since "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." MRE 411. "The other issues of liability and damages are unrelated to the issue of whether [parties] must provide insurance coverage to cover any potential damages . . . assessed by the jury." *Cap. City Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505, 512 (¶19) (Miss. 2004); *see also id*. at (¶17) ("the issue of the amount of damages [a party] may owe one another is completely unrelated to the issues of whether there is insurance coverage provided"). Accordingly, "a separate trial may be applied to avoid prejudice such as when a jury would learn that the defendant is insured." *Id*. at 512 (¶18).

¶32.    A series of cases from our Supreme Court explained the proper procedure for trying

18

a case involving a question of coverage while making sure the fact-finders do not hear about insurance. "[I]f a question of insurance coverage exists, a party should be able to bring the insurer into a lawsuit and have the coverage question resolved by the [trial] judge." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 71 (Miss. 1998). The question of whether there is coverage is not for the jury. "Such reviews of insurance contracts *do not involve the jury* and are often cursory." *Id*. (emphasis added).

¶33.     The *Lewis* Court explained that by separating a trial in this fashion, the process was simplified. "This procedure simply promotes judicial economy by allowing coverage questions to be resolved at the same time as an underlying lawsuit; *it does not allow the question to go to the jury* except by previous rules in our decisions." *Id*. (emphasis added).

¶34.     In a successor decision on insurance coverage, the Supreme Court found a trial court failed to follow *Lewis* and "the trial court should have bifurcated the trial *as a matter of law*." *Boots Smith*, 889 So. 2d at 511 (¶16) (emphasis added). The proper route was "that the trial judge should have bifurcated the trial and first determined the extent of liability, if any," that the defendant had to the plaintiff. *Id*. at 512 (¶19). "If the jury found [the defendant] liable to [the plaintiff], then the trial court could have conducted a hearing on the declaratory judgment and determined whether the . . . insurance policy covered the acts of [the defendant]." *Id*.

¶35.     *Boots Smith* takes pains to point out that two different things are going on here:  first, the liability phase of a trial, and second, whether there is coverage under a policy if a jury

19

finds liability. The unanimous Court ultimately ordered that "a new *bifurcated* trial on the issues of liability and insurance coverage under the policy will be held consistent with this opinion." *Id*. at 517 (¶39) (emphasis added); *see also Poindexter v. S. United Fire Ins. Co.*, 838 So. 2d 964, 968 (¶17) (Miss. 2003) (agreeing with an insurer that the initial issue before coverage is applied is whether there is liability, and that to go after insurance before liability is to put "the cart before the horse").

¶36.    In the case before us, the insurer admitted that Thompson had a contract for insurance and admitted that the contract included UM coverage.  However, it denied that UM coverage applied in the case at hand. Since the fault of the other driver was uncontested, the only witnesses who had been put on in the trial below *up to this point* were the plaintiff and a doctor. It is true there was no mention of insurance, or excess coverage, or UM, or any of that stuff. Nor should there have been, and it would have been improper to bring up before the jury. In fact, if the plaintiff had brought up the existence of insurance, the insurer could have asked for a mistrial, which the trial judge could have granted. Therefore, I respectfully dissent and would reverse and remand.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**