357 So.2d 122 (1978)
MID-CONTINENT AIRCRAFT CORPORATION and Georgia-Pacific Corporation
v.
Truman WHITEHEAD.
No. 50178.
Supreme Court of Mississippi.
April 5, 1978.
*123 Fair & Mayo, James C. Mayo, Louisville, Robert L. Crook, Ruleville, for appellants.
Hathorn & Hathorn, J. Hoy Hathorn, Louisville, for appellee.
Before PATTERSON, BROOM, AND BOWLING.
BROOM, Justice, for the Court:
Damage to his cotton crop allegedly resulting from nearby timber spraying activities of Mid-Continent Aircraft Corporation (Aircraft herein, one of appellants) and Georgia-Pacific Corporation (Georgia-Pacific herein, the other appellant), was the gist of the suit of the plaintiff, Truman Whitehead (appellee). Trial was in the Circuit Court of Winston County, where the jury returned a verdict of $14,816.10 favorable to the appellee. We reverse.
Appellee charged that his 1974 cotton crop production was diminished because of the negligence of Aircraft in allowing a hormone-type herbicide spray substance to drift onto the lands where appellee's cotton crop was growing. He alleged that as agent of Georgia-Pacific, Aircraft was spraying Georgia-Pacific's timber, and that those in charge of the spraying negligently flew the airplanes too close to his (appellee's) cotton fields during heavy fogs and adverse wind conditions, thereby resulting in the chemicals getting upon and damaging the cotton plants. Appellee joined both Aircraft and Georgia-Pacific as defendants, along with two other defendants: Ronald Whitehead and Bob Burks (resident agents and employees of Georgia-Pacific), who allegedly directed the timber spraying activities.
At the conclusion of appellee's presentation of his case, Whitehead and Burks moved for a directed verdict, which the lower court sustained and from which action appellee cross appeals. Aircraft and Georgia-Pacific appeal directly contending, among other things, that the jury verdict for appellee is against the overwhelming weight of evidence. Other facts and legal propositions will be stated later in this opinion.
WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE? During the trial the appellants moved for a directed verdict; they requested a peremptory instruction when all the evidence had been presented. *124 The evidence shows that the appellants were spraying Georgia-Pacific's timber in close proximity to appellee's cotton fields. Called by the appellee as an adverse witness, Jim Hall (Aircraft's representative) testified that he knew that Georgia-Pacific's land joined appellee's land; Hall also knew that growing cotton was susceptible to adverse effects from the herbicide. He instructed his pilots to keep the planes "away from these crops when the wind was in the wrong direction and velocity or when they had fog conditions." The totality of the testimony of various other witnesses indicated that the herbicides sprayed by Aircraft for Georgia-Pacific did get upon the cotton crop of appellee, and at least caused minimal if not more damage. Though the testimony may not have been as direct as might be desirable, it at least raised an inference which the jury could draw from the testimony, that the appellants did not exercise proper care in their spraying activities and as a result thereof some of the chemical spray got upon the cotton plants.
It is true that some of the expert testimony, including that of Robert McCarty, established (from field inspections) very little damage which would diminish appellee's cotton yield. Nevertheless, we are of the opinion that there was sufficient evidence to justify the lower court's denial of appellants' requested directed verdict and peremptory instruction.
DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN OVERRULING THE APPELLANTS' MOTION FOR A MISTRIAL AFTER A WITNESS FOR APPELLEE STATED THAT L.B. DAVIS WAS REPRESENTING THE INSURANCE CARRIER? The episode under discussion occurred during the testimony of appellee's witness Jessie Crosby. Crosby had testified concerning his activity in meeting with others and checking on herbicide damage to crops in Winston and Choctaw Counties.
Q. Now, you mentioned Mr. L.B. Davis. Who is Mr. L.B. Davis?
A. It was my understanding that Mr. L.B. Davis was representing Mid-Continent and Georgia-Pacific for an insurance company 
Q. No, you can't mention insurance 
Following the testimony, counsel for appellants moved for a mistrial on account of the reference to an insurance company which counsel stated was prejudicial to the appellants. The court offered to instruct the jury to disregard the testimony concerning the insurance company, but defense counsel declined and pointed out that any comment about the matter would make it more harmful to his clients. Further questioning by plaintiff's counsel emphasizing L.B. Davis and his testimony, though not mentioning the word insurance again, may very well have accentuated the prejudice to the cause of the appellants. The general rule in this jurisdiction is that no reference should be made to the fact that a defendant is covered by liability insurance. Morris v. Huff, 238 Miss. 111, 117 So.2d 800 (1960). We do not hold that we would reverse this case on this ground standing alone. However, upon the whole record before us, which shows that proof of damages to the cotton crop and diminishment of its yield was vague and weak, fairness demands a new trial.
Other argument of appellants relates to the matter of appellee's counsel at trial repeatedly asking witnesses about statements made by Davis (during his investigation), who Crosby had identified as being connected with an insurance company. The argument is made that although the circuit judge cautioned appellee's counsel about long argumentative type questions concerning Davis, counsel continued to propound similar questions to his client's witnesses. No further discussion in this respect is necessary here because these actions by counsel will not likely occur again at retrial.
DID THE TRIAL COURT ERR IN ADMITTING TESTIMONY AS TO AN *125 ERRONEOUS MEASURE OF DAMAGES? Appellee was permitted to testify, over objection, to the following computation of his 1974 cotton crop loss caused by the herbicide. In explaining his computed loss, he stated the following: (1) His 1974 actual yield "was 604 pounds lint per acre, which was 311 pounds less than the projected yield" of 915 pounds set for that year; (2) cotton was selling for 50¢ per pound, which he multiplied by the 311 figure aforesaid, giving him a computed loss of $155.50 per acre as to lint; (3) concerning seed, he said it came to "$34.35 per acre" according to computation made by the ginner; (4) he added the $34.35 per acre seed loss to the $155.50 lint loss "making a total of $189.95 per acre" loss; and (5) he multiplied $189.95 by 78, the number of acres in cotton production, which made the sum of $14,816.10, the exact amount of the jury verdict.
Appellants cogently argue that using the "projected yield" figure in the computation of his 1974 production loss was unrealistic, requiring reversal. "Projected yield," according to witness Don Goodwin of the Winston County A.S.C. office, was related to the historical actual yields but was "adjusted for abnormal weather conditions, or any other natural causes that the farmer could not have overcome, or wasn't his fault that it occurred." Goodwin further defined the projected yield as that particular farmer's "potential" or "production capacity" barring some unforeseen difficulty. In arriving at the projected yield for a certain year, the A.S.C. officials would average the last three years actual yield and add to that figure so-called "adjustments" for estimated loss of production attributable to unforeseen difficulties: adverse weather, insect damage, et cetera. The purpose of the projected yield equation was to be the base upon which the Federal Government made "disaster payments" to a farmer whose actual yield was less than its potential because of adverse weather or insect factors. The record shows the following history of appellee's cotton production for the years 1971 through 1974:

 Average Actual
 No. Acres Production Projected
Year in Cotton Per Acre Yield 
1971 81.6 691 lbs. 1055 lbs.
1972 72.8 557 lbs. 975 lbs.
1973 76.1 651 lbs. 915 lbs.
1974 78 604 lbs. 915 lbs.

According to Goodwin's testimony, the average actual production for the three years 1971-1973 was 633 pounds. Appellee's actual average yield per acre in 1974 was 604 pounds. Nevertheless, his computation of his loss for that year was based upon the higher artificial "Projected Yield" figure of 915 pounds, from which he deducted actual production of 604 pounds, showing an alleged 311 pounds per acre loss of production. It is to be noted that the record shows actual production of the following pounds per acre for three prior years: 1968  1934 pounds; 1969  1060 pounds; 1970  1021 pounds. Thus, for 1968 through 1974, appellee's actual production per acre was each year decreasing steadily except for 1973 when production increased but was less than in 1971. Comparison of his actual production of 604 pounds in 1974 with the three preceding years shows that 1974 was a better year than 1972, and not a great deal worse than 1971 or 1973. His average actual yield in 1974 was only 29 pounds less than the average of the three preceding years. The figure of 915 pounds which appellee used in computing his 1974 loss was an administrative figure used by the Federal Government to determine benefits to be paid him and cannot be acceptable as a measure of damages.
In ascertaining damage to growing crops, the computation should be based (in the main but not exclusively) upon the difference between the value of the crop immediately before and just after the injury or damage. Such a rule must be given sufficient flexibility to allow consideration of pertinent practical factors dictated by fairness and reason. The cost to realize production: cost of cultivation, harvesting and marketing, are some of the practical factors which may be used to ascertain the value. Stigall v. Sharkey Co., 213 Miss. 798, *126 57 So.2d 146 (1952), Sugg. of Error Overruled, 213 Miss. 806, 58 So.2d 5 (1952); 25 C.J.S. Damages § 85b (1966); and Aerial Agriculture Services of Montana v. Richard, 264 F.2d 341 (5th Cir.1959).
In his cross appeal appellee contends that the lower court erred in granting a directed verdict in favor of the resident defendants, Ronald Whitehead and Bob Burks. There is merit to the cross appeal in this respect because the evidence shows from the testimony of Whitehead and Burks that they were in charge of and responsible for the spraying operations. Appellee testified that spraying operations were conducted when the winds were blowing, and early in the morning when it was foggy and damp. When the weather and wind conditions were unfavorable, the jury could reasonably infer that spraying operations should have ceased, and the jury could, upon this record, infer from the testimony that Burks and Whitehead were negligent for failure to halt spraying during unfavorable wind, or weather conditions. There was at least a conflict in this aspect of the case and, as is provided in Mississippi Code Annotated § 11-7-17 (1972), all questions of negligence and contributory negligence are for jury determination. Therefore, that part of the lower court's judgment granting a directed verdict as to Whitehead and Burks is reversed and at retrial they will still be in the lawsuit.
Appellee argues in his cross appeal that the lower court erred by its failure to submit to the jury the issue of punitive damages. This argument is without merit upon the facts of the case. We point out in conclusion that the proof on the issue of causal connection between the acts complained of and any diminishment of appellee's cotton production for the year in issue is skimpy and barely sufficient. The expert witnesses who testified noticed only minimal damage, if any, to the cotton plants attributable to the herbicide spray. Also, the history of actual production tends to negate substantial damage to the 1974 cotton crop traceable to the herbicide, but we conclude there was a case (though skimpy) sufficient to go to the jury.
REVERSED ON DIRECT AND CROSS APPEALS, AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.