889 So.2d 505 (2005)
CAPITAL CITY INSURANCE COMPANY and W.L. Wicker d/b/a Wicker Logging
v.
G.B. "BOOTS" SMITH CORPORATION.
No. 2002-CA-01896-SCT.
Supreme Court of Mississippi.
October 28, 2004.
Rehearing Denied January 6, 2005.
Brent E. Southern, Patrick M. Tatum, Ridgeland, William T. May, Newton, attorneys for appellants.
Brett Woods Robinson, Laurel, Christopher Brian McDaniel, attorneys for appellee.
EN BANC.
*506 EASLEY, Justice, for the Court.

PROCEDURAL HISTORY
¶ 1. G.B. "Boots" Smith Corporation (Boots Smith) was awarded a contract with the Mississippi Department of Transportation (MDOT) for improvements being made to a right of way along Interstate 20 in Scott and Newton Counties. Boots Smith hired a subcontractor, W.L. Wicker d/b/a Wicker Logging (Wicker Logging), to clear some timber on the right-of-way. Capital City Insurance Company (Capital City) insured Wicker Logging and as part of the terms of the sub-contract with Boots Smith, Wicker Logging had Capital City add Boots Smith as an insured on its general liability policy.
¶ 2. Boots Smith filed suit against Wicker Logging and Capital City in the Circuit Court of the Second Judicial District of Jones County, Mississippi, for damages arising out of the cost of repairs to the ditches. Wicker Logging filed a counter-claim against Boots Smith for services rendered, claiming payment of money owed, and delay costs. Capital City filed a counter-claim and a cross-claim for declaratory judgment regarding the coverage under the insurance policy.
¶ 3. The Jones County Circuit Court, Judge Billy Joe Landrum presiding, found that Capital City's insurance policy provided coverage to both Boots Smith and Wicker Logging. In addition, the trial court ruled on two directed verdicts. The first directed verdict was in favor of Boots Smith and determined that Wicker Logging was responsible for the damage to the ditches on the right-of-way. Therefore, Wicker Logging and Capital City were liable to Boots Smith for costs associated with the repair of the ditches by Boots Smith. The second directed verdict was in favor of Wicker Logging and determined that Boots Smith owed Wicker Logging the balance of payment pursuant to the contract.[1] The trial court submitted to the jury the issues of the actual damage amount owed to Boots Smith for the repairs and whether Wicker Logging was entitled to damages for the delays. The jury awarded Boots Smith $167,280.63 for the costs of repairs to the ditches and awarded Wicker Logging $86,747 ($54,000 for 9 days of delays, $28,476 for the unpaid portion of the contract and $4,271 as 15% of the unpaid contract). The trial court subsequently reduced Wicker Logging's damage award by $4,271.
¶ 4. Boots Smith and Wicker Logging both filed post-trial motions seeking attorneys fees and interest. The trial court granted the motion as to Boots Smith and denied the motion as to Wicker Logging. In addition, Wicker Logging filed a post-trial motion for new trial and judgment as a matter of law, and Capital City filed a post trial motion for reconsideration, new trial or in the alternative a JNOV. The trial court denied both Wicker Logging and Capital City's post-trial motions.

FACTS
¶ 5. Boots Smith was awarded a contract with MDOT to perform some improvements on Interstate 20 in Scott and Newton Counties. Boots Smith hired Wicker Logging to clear timber from the right-of-way areas. Wicker Logging was to received $60,000 and the timber as payment for the project. A "fell-a-buncher" which is a large piece of equipment was used by Wicker Logging to clear the right-of-ways. In order to gain access to some of the trees, the equipment had to pass over concrete culverts or ditches located between the interstate and the right-of-way. When they were crossed by the fell-a-buncher, *507 some of the ditches were damaged. MDOT gave Boots Smith a list of damaged ditches and sought repair of the damage to the ditches by Boots Smith. MDOT owed Boots Smith money for work performed on the road project and withheld payment of the funds until Boots Smith repaired the ditches. Once it completed the repairs, Boots Smith requested payment from Wicker Logging for the repairs to the ditches.
¶ 6. Wicker Logging refused to pay Boots Smith for the repair work, and Capital City denied coverage to both Boots Smith and Wicker Logging. Thus, Boots Smith filed suit against Wicker Logging and Capital City. Wicker Logging filed a counter-claim against Boots Smith and Capital City filed a counter-claim, cross-claim and a declaratory judgment pursuant to the coverage under the insurance policy. Following a jury verdict and an order granting attorney fees in favor of Boots Smith and the denial of post-trial motions by Wicker Logging and Capital City, the following issues were raised on appeal:
STATEMENT OF THE ISSUES
A. Wicker Logging
I. Whether the Court erred in granting Boots Smith's motion for directed verdict and further erred in denying Wicker Logging's motion for directed verdict.
II. Whether the court erred in failing to grant Wicker Logging's motion in limine precluding Boots Smith's timber expert from testifying as to profits made by Wicker Logging from the sale of the cut timber.
III. Whether the court erred by denying the motion to bifurcate seeking to preclude testimony that Wicker Logging maintained insurance.
IV. Whether the trial court erred in granting Boots Smith attorney's fees and interest.
V. Whether the trial court erred in granting an offset of judgments.
VI. Whether the trial court erred by denying Wicker Logging's motion to transfer venue.
B. Capital City Insurance
I. Whether the trial court was biased toward Boots Smith throughout the proceedings, warranting reversal.
II. Whether Boots Smith put on sufficient proof to establish liability on the part of Wicker Logging.
III. Whether Boots Smith put on sufficient proof to establish damages.
IV. Whether the trial court erred by denying the motion to bifurcate the trial.
V. Whether the trial court erred by denying Capital City's declaratory judgment action.

LEGAL ANALYSIS
¶ 7. Wicker Logging and Capital City raise a number of issues on appeal. Two of the combined eleven issues are dispositive of this appeal. Accordingly, the first issue will addressed concerns whether the trial court erred by refusing to bifurcate the trial. Both Wicker Logging in its issue III and Capital City in its issue IV raise bifurcation on appeal. The second issue that will be addressed is venue.

I. Whether the trial court erred by denying the motion to bifurcate the trial.
¶ 8. Both Wicker Logging and Capital City argue that the trial court erred by *508 denying a motion to bifurcate the trial. On the morning of the trial, the trial judge heard arguments on this motion.
[Capital City]: We have another matter we need to bring up then. Your Honor, in light of the complicated issue involved here and the fact that we are going to have to present matters of law and fact to the jury and call witnesses, the issue regarding coverage is premature at this point because there has been no determination as who would be the, "Covered party" under the policy. For that reason we think in an attempt to avoid confusing issues to the jury, to avoid prejudice to any party in the lawsuit, we should bifurcate these issues and let the liability issue be decided first as between Boots Smith and Wicker by mention of the fact that there is an existence of an insurance company or policy may or may not be available to satisfy the judgment. As to that point 
The Court: What is your response Mr. Melvin?
Mr. Melvin[2]: Court, please, again this matter has been filed for some length of time. The Lewis case provided that that could be  the declaratory judgment could be joined in this type of suit. It also stated that it could be called up and disposed of prior to the hearing. This was not done. There has been more than an abundant length of time. There are the problems in bifurcating the trial. It is that the testimony in  I have not been replying to the issues in the declaratory judgments because there are issues that are also complicated. And the same issues involved. And not having a position, the only thing I know to do is put a jury in the box and try all the issues in front of the jury.
The Court: Motion overruled.
¶ 9. The court papers do not reflect that a motion to bifurcate was filed with the Jones County Circuit Court by either Wicker Logging or Capital City. Both Wicker Logging and Capital City claim to have joined in a motion to bifurcate. Capital City's counsel argued this motion before the trial judge on the morning of the trial.[3] We cannot find where Wicker Logging allegedly joined in this motion with Capital City. However, it is clear from the record that Capital City argued the motion; and therefore, the issue is properly before this Court. Capital City argues that the trial court should have been bifurcated to first determine whether Wicker Logging had any liability before reaching the issues of coverage and damages.
¶ 10. Capital City relied upon M.R.C.P. 42(b) and M.R.E. 411 for authority. M.R.C.P. 42(b) states:
The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Section 31 of the Mississippi Constitution of 1890.
The Comment to M.R.C.P. 42(b) states in part:

*509 The provision for separate trials in Rule 42(b) is intended to further convenience, avoid delay and prejudice, and serve the ends of justice. It is the interest of efficient judicial administration that is to be controlling, rather than the wishes of the parties. The piecemeal trial of separate issues in a single suit is not to be the usual course. It should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule.
If a single issue could be dispositive of the case, and resolution of it might make it unnecessary to try the other issues, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties. If, however, the preliminary and separate trial of an issue will involve extensive proof and substantially the same facts as the other issues, or if any saving in time and expense is wholly speculative, a separate trial should be denied. A separate trial may also be ordered to avoid prejudice, as where evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues. For example, this principle may be applied, and a separate trial ordered though a single trial would otherwise be preferable, because in a single trial the jury would learn that defendant is insured. The possibility of such prejudice, however remote, justifies a separate trial if the issues are so unrelated that there is no advantage in trying them together. But if the issues are related, there is considerable authority to the effect that jurors today assume the presence of insurance, that knowledge of the fact of insurance is therefore not prejudicial, and that a separate trial should not be ordered.
Ultimately the question of separate trials should be, and is, within the discretion of the trial court. It must weigh whether one trial or separate trials will best serve the convenience of the parties and court, avoid prejudice, and minimize expense and delay. The major consideration, of course, must be which procedure is more likely to result in a just, final disposition of the litigation.
(emphasis added). M.R.E. 411 states:
Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.
The Comment to M.R.E. 411 states:
One of the primary reasons for excluding evidence of insurance or the lack of it is to prevent the jury from deciding the case on improper grounds. Rule 411 reflects existing Mississippi practice. Evidence of the existence of defendant's insurance is irrelevant as to his negligence and admission of such evidence may be grounds for a mistrial. See Mid-Continent Aircraft Corp. v. Whitehead, 357 So.2d 122 (Miss.1978); Petermann v. Gary, 210 Miss. 438, 49 So.2d 828 (1951). Evidence of liability insurance may be relevant for other purposes, such as proof of agency, ownership, or bias.
¶ 11. In Lewis v. Allstate Insurance Co., 730 So.2d 65, 67-68 (Miss.1998), the insurance company filed a complaint for declaratory judgment claiming that the exclusionary provisions of the policy precluded coverage. This Court reviewed a trial court decision that granted summary judgment in favor of the insurance company and affirmed the ruling. Id. at 68. This Court further held:

*510 We take this opportunity to state that if an insurance company can conduct a declaratory action regarding coverage prior to resolution of an underlying wrongful death trial, then the insureds and third party beneficiaries should be able to raise the coverage question in the underlying lawsuit as well. Pursuant to our rules of civil procedure, a hearing to determine coverage may be conducted if necessary. See Miss. R. Civ. P. 57 cmt. (recognizing that a plaintiff may ask for a declaratory judgment either as his sole relief or in addition or auxiliary to other relief). Such reviews of insurance contracts do not involve the jury and are often cursory. Accordingly, if a question of insurance coverage exists, a party should be able to bring the insurer into a lawsuit and have the coverage question resolved by the judge.
Lewis, 730 So.2d at 71(emphasis added). In terms of placing the fact that insurance exists before a jury, this Court held that "[i]t should be noted that this does not mean that a party can mention insurance before a jury, as that rule still holds in this state." Id. (citing West Cash & Carry Bldg. Materials of McComb, Inc. v. Palumbo, 371 So.2d 873, 876 (Miss.1979))(emphasis added).
¶ 12. In Jackson v. Daley, 739 So.2d 1031, 1039 (Miss.1999), this Court held:
It is well established in this state that evidence of insurance or lack thereof may not be presented at a trial to show who would have to pay the judgment. Morris v. Huff, 238 Miss. 111, 118-19, 117 So.2d 800, 802-03 (1960); Snowden v. Webb, 217 Miss. 664, 675-76, 64 So.2d 745, 750 (1953). This Court has stated, "... it may not be conveyed to the jury that the defendant in the case has no protection by insurance, and if the verdict is against him, he, not the insurance company, must pay it.... It would be manifestly unfair to permit a defendant in a damage suit to show that he carried no insurance and whatever verdict rendered would be enforced upon him personally." Snowden, 217 Miss. at 675-76, 64 So.2d at 750 (quoting Avent v. Tucker, 188 Miss. 207, 225, 194 So. 596, 602 (1940)).
In Toche v. Killebrew, 734 So.2d 276, 283 (Miss.Ct.App.1999), Toche sought to question two expert witnesses of Killebrew concerning the fact that their medical malpractice insurer was the same as Killebrew. Toche argued that the two experts might have been biased because they could have expected increased premiums in the event that the jury verdict was against Killebrew. Id. The Court of Appeals held:
There is a long-standing principle of law in this State that gratuitously informing the jury, or even intimating to the jury, that any verdict returned by them will be satisfied by the defendant's liability insurance provider so interferes with the jury's ability to fairly deliberate the true issues of the case as to constitute reversible error. Snowden v. Skipper, 230 Miss. 684, 696, 93 So.2d 834, 839 (1957); Odom v. Walker, 193 Miss. 862, 871-72, 11 So.2d 452, 455 (1943); Herrin v. Daly, 80 Miss. 340, 342, 31 So. 790, 791 (1902). The Mississippi Rules of Evidence specifically prohibit such evidence if its sole purpose relates to the question of the negligent or otherwise wrongful conduct of the defendant. M.R.E. 411.
Toche, 734 So.2d at 283.
¶ 13. Boots Smith sued Capital City, its insurer. In addition, Boots Smith acquired the insurance through its working relationship with Wicker Logging. Boots Smith claims that not revealing these facts to the jury would have prejudiced its rights to pursue protections and entitlements *511 offered by the insurance policy. In addition, Boots Smith claims that both Wicker Logging and Capital City ignore the fact that Boots Smith sued Capital City in its capacity as a separate insured. Further, Boots Smith argues that with the timing of the motion (on the day of the trial), the litigation of the coverage issue would not have disposed of the case and was not in the interest of judicial economy. Since the jury only decided the issue of damages, Boots Smith claims that the inclusion of the policy information about Capital City did not affect the jury and the verdict was easily linked to the testimony.
¶ 14. The Court finds that the trial court abused its discretion in refusing to bifurcate the trial. During the trial, Boots Smith put on evidence that Wicker Logging was insured without objection. Evidence such as the insurance certificates, showing that Boots Smith was an additional insured under Wicker Logging's policy, and the insurance policy was admitted into evidence. However, the trial court prior to seating the jury had overruled Capital City's motion for declaratory judgment and motion to bifurcate the trial. Since the judge already ruled to deny the motion to bifurcate the insurance issues from the liability and damage issues, Capital City was forced to proceed and participate in the trial from the beginning and any insurance issue under that ruling would be before the jury.
¶ 15. An ore tenus motion to bifurcate the trial was denied by the trial court prior to trial. As clearly acknowledged in the above opinion, Wicker Logging and Capital City did not file a written motion to bifurcate before the trial, but rather Capital City waited until the morning of trial to bring this issue to the attention of the trial court.
¶ 16. Considering the facts of this case, the trial court should have bifurcated the trial as a matter of law. In other words, Capital City did not have to shoulder the burden of either filing or bringing an ore tenus motion to bifurcate the trial in this instance. M.R.C.P. 42 and M.R.E. 411 both address the issue of potential prejudice and the difficulties when insurance coverage is a factor in a lawsuit. M.R.C.P. 42 concerns the separation or consolidation of trials, and the rule specifically mentions prejudice whereas the comments mention prejudice and the impact of insurance in a case. Pursuant to M.R.C.P. 42 and its comments, the wishes of a party are not controlling, and a trial judge has discretion to bifurcate trials for convenience, avoidance of delays and prejudice and for justice. M.R.C.P. 42 states in part:
A separate trial may also be ordered to avoid prejudice, as where evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues. For example, this principle may be applied, and a separate trial ordered though a single trial would otherwise be preferable, because in a single trial the jury would learn that defendant is insured. The possibility of such prejudice, however remote, justifies a separate trial if the issues are so unrelated that there is no advantage in trying them together.
(emphasis added). This portion of the comment, authorizes a separate trial to avoid prejudice such as when a jury would learn that the defendant is insured. Critical to the analysis is the punctuation contained within comment. The comment states that a separate trial may be ordered to avoid prejudice such as when evidence on one issue is heard by a jury and may prejudice a party on another issue. The comment immediately follows with the example of a jury learning that a defendant is insured. In effect, the comment states *512 that, while a single trial would ordinarily be preferable, the jury would be aware that a defendant is insured. Therefore, a separate trial should be ordered to protect against prejudice. Granted, the comments place a restriction on the application of this principle to situations where the issues are unrelated. If the issues are determined to be related, the comment notes there is some authority to suggest that today's juror assumes there is insurance. Therefore, a party is not prejudiced and separate trials are not needed.
¶ 17. In the case sub judice, the issue of the amount of damages Boots Smith or Wicker Logging may owe one another is completely unrelated to the issues of whether there is insurance coverage provided by Capital City. Even though the court, not the jury, ultimately decided the issue of liability between Boots Smith and Wicker Logging, that issue also is completely unrelated to the issue of whether Capital City must provide insurance coverage for either of its insureds. Damages and liability in this case are issues solely involving Boots Smith and Wicker Logging, not Capital City.
¶ 18. The trial court denied the motion to bifurcate and did not make a determination on the declaratory judgment issue until after Boots Smith and Wicker Logging rested their cases. The case law and M.R.C.P. 42 and M.R.E. 411 generally prohibit mentioning insurance to a jury to avoid prejudice and deciding a case on improper grounds. As M.R.E. 411 states in part "[e]vidence that a person was or was not insured against liability is not admissible upon the issue of whether he acted negligently or otherwise wrongfully." In addition, M.R.E. 411 set out a number of exceptions such as "proof of agency, ownership, or control, or bias or prejudice of a witness." None of these exceptions were asserted during the trial. M.R.C.P. 42(b) and its comments concern whether a trial should be separated, and the comments suggest that a separate trial may be applied to avoid prejudice such as when a jury would learn that the defendant is insured.
¶ 19. This Court finds that the trial judge should have bifurcated the trial and first determined the extent of liability, if any, that Wicker Logging had to Boots Smith. If the jury found Wicker Logging liable to Boots Smith, then the trial court could have conducted a hearing on the declaratory judgment and determined whether the Capital City insurance policy covered the acts of Wicker Logging. The other issues of liability and damages are unrelated to the issue of whether Capital City must provide insurance coverage to cover any potential damages to either Boots Smith or Wicker Logging assessed by the jury. Capital City should not have had the burden of arguing the issue of bifurcation. If the trial judge had granted the bifurcation, then the trial judge would have avoided any potential for prejudice and would have ensured that the jury decided the case for the proper reasons. Accordingly, we find that the trial judge abused his discretion, and this case must be reversed and remanded on this issue.

II. Venue.
¶ 20. Wicker Logging and Capital City filed motions for change of venue prior to trial. The trial court denied the motion for change of venue to Scott County. At the time of the filing of this lawsuit in January 2000, Miss.Code Ann. § 11-11-7, the venue statute for insurance companies, was in effect. In 2002 the Legislature repealed Miss.Code Ann. § 11-11-7 and modified Miss.Code Ann. § 11-11-3, the general venue statute. Despite the 2002 legislative change in the statutes, the previous versions of the statutes, which are cited below, were applicable to the facts of *513 this case because of the January 2000 date on which the lawsuit was filed.[4]
¶ 21. On appeal, Wicker Logging again raises the issue of change of venue. Wicker Logging argues that the motion to change venue should have been granted pursuant to Miss.Code Ann. § 11-11-3, not Miss.Code Ann. § 11-11-7. W.L. Wicker is a resident of Newton County, Capital City is a foreign corporation from South Carolina, and the damage to the ditches was alleged to have occurred in Scott County. Boots Smith Corporation is domiciled in Jones County.
¶ 22. This Court applies an abuse of discretion standard on a motion to change venue. Wayne Gen. Hosp. v. Hayes, 868 So.2d 997, 1002 (Miss.2004) (citing Guice v. Miss. Life Ins. Co., 836 So.2d 756, 758 (Miss.2003)). This Court will not disturb a trial judge's ruling on appeal "unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." Id. (quoting Guice, 836 So.2d at 758)
¶ 23. Miss.Code Ann. § 11-11-3 was amended in 2002. (See 2002 Miss. Laws, 3rd Ex.Sess., ch. 2, § 1, eff. January 1, 2003; 2002 Miss. Laws, 3rd Ex.Sess., ch. 4, § 1, eff. January 1, 2003.) However, at the time this lawsuit was commenced Miss.Code Ann. § 11-11-3 stated:
Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue and, if the defendant is a domestic corporation, in the county in which said corporation is domiciled or in the county where the cause of action may occur or accrue,.... If a civil action is brought in an improper county, such action may be transferred to the proper county pursuant to section 11-11-17.
(emphasis added).
¶ 24. Miss.Code Ann. § 11-11-7 concerning insurance companies was repealed during the 2002 legislative session. (See 2002 Miss. Laws, 3rd Ex.Sess., ch.4, § 2, eff. Jan. 1, 2003). However, at the time this lawsuit was commenced on January 13, 2000, Miss.Code Ann. § 11-11-7 was in effect and stated:
Actions against insurance companies, groups of insurance companies or an insurance association may be brought in any county in which a loss may occur, or, if on a life policy, in the county in which the beneficiary resides, and process may be sent to any county, to be served as directed by law. Such actions may also be brought in the county where the principal place of business of such corporation or company may be. In case of a foreign corporation or company, such actions may be brought in the county where service of process may be had on an agent of such corporation or company or service of process in any suit or action, or any other legal process, may be served upon the insurance commissioner of the state of Mississippi, and such notice will confer jurisdiction on any court in any county in the state where the suit is filed, provided the suit is brought in the county where the loss occurred, or in the county in which the plaintiff resides.

(emphasis added).
¶ 25. Wicker Logging relies upon this Court's decision in Stubbs v. Miss. Farm *514 Bur. Cas. Ins. Co., 825 So.2d 8 (Miss.2002), for authority that venue is proper in Scott County. In Stubbs, the plaintiffs filed suit against a number of defendants including Farm Bureau for a single car accident. Id. at 11. The plaintiffs' Farm Bureau policy provided liability coverage but no collision or comprehensive coverage. Id. at 13. This Court held that no insurance coverage existed that covered the plaintiffs' claim and that Miss.Code Ann. § 11-11-7, therefore, did not apply to the facts of the case. 825 So.2d at 14.
¶ 26. Boots Smith, on the other hand, relies upon Blackledge v. Scott, 530 So.2d 1363 (Miss.1988), for authority that venue was proper in Jones County. In Blackledge, an automobile accident case, the various parties included: the plaintiffs, residents of Claiborne County; defendant Blackledge, a resident of Jones County; and three defendant insurance companies, one was a foreign company and two were domestic companies. Id. at 1364. The accident and loss occurred in Hinds County. Id. Scott filed suit in the Chancery Court of Claiborne County. Id. at 1365. This Court held that the "suit lay outsides the subject matter jurisdiction of the chancery court," the case should have been tried before a jury, and that "the suit against the insurance companies amounts to a fraudulent joinder as to venue." Id. at 1365-66. Accordingly, this Court reversed and remanded the case for a transfer to a circuit court of a county of proper venue. Id. at 1366.
¶ 27. Despite this ruling, the Court generally addressed Miss.Code Ann. § 11-11-7 (1972) concerning proper venue in suits involving insurance companies. This Court stated:
The section has been construed to mean that "if service of process is upon the state insurance commissioner, venue against any insurance company, foreign or domestic, lies in the county where the loss occurred or where the plaintiff resides." Hartford Fire Insurance Co. v. Producer's Gin of Hernando, Inc., 326 So.2d 807, 808-09, note 2, (Miss.1976) (emphasis in original). Therefore, if the jurisdiction and joinder were proper, venue would lie in Claiborne County.
Blackledge, 530 So.2d at 1364-65 (emphasis added). In addition, this Court stated:
In suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants. This is true where the defendant upon whom venue is based is subsequently dismissed from the suit. In such situations, venue as to the remaining defendants continues despite the fact that venue would have been improper, if the original action had named them only. Jefferson v. Magee, 205 So.2d 281 (Miss.1967).
530 So.2d at 1365 (emphasis added).
¶ 28. Blackledge as opposed to Stubbs clearly concerned a foreign insurance company as a defendant. While this Court found that the Claiborne County, the county of residence of Scott, the plaintiff, was improper based upon fraudulent joinder, the Court nevertheless, made clear that "if service of process is upon the state insurance commissioner, venue against any insurance company, foreign or domestic, lies in the county where the loss occurred or where the plaintiff resides." Blackledge, 530 So.2d at 1364-65 (quoting Hartford Fire Ins. Co. v. Producer's Gin of Hernando, Inc., 326 So.2d 807, 808-09, n. 2 (Miss.1976)) (emphasis added).
¶ 29. In the case sub judice, Capital City is a foreign insurance company from South Carolina. Boots Smith Corporation is domiciled in Jones County, Mississippi. The complaint against Capital City was served upon the insurance commissioner of the State of Mississippi. Thus, according *515 to the insurance statute venue against the insurance company lies either in the county where the loss occurred or in the county where the plaintiff resides. Miss.Code Ann. § 11-11-7. See also Blackledge, 530 So.2d at 1364-65.
¶ 30. Because this case involves both an insurance company and a Mississippi resident defendant, we must look further than the insurance statute alone. We must also look to the general venue statute, Miss.Code Ann. § 11-11-3, and to the specific language used in each statute.
¶ 31. The main issue here centers on the mandatory "shall" language in § 11-11-3 versus the permissive "may" language in § 11-11-7. The venue statutes have been revised since this case was commenced, and more recently the venue statutes have been revised further effective September 1, 2004. While the former version of § 11-11-3 and the now repealed § 11-11-7 were in effect, neither statute referenced the other. Therefore, the statutes were competing in a sense, yet statutory construction gives preference to one statute over the other. Had the Legislature intended for each statute to have equal footing or equal force then both statutes should have had the mandatory "shall" language or § 11-11-7 would have explicitly stated that § 11-11-7 was controlling in suits involving insurance companies, foreign or domestic, either as sole defendants or as co-defendants with other resident defendants.
¶ 32. The venue statutes which were in effect for this case were never designed to remove a resident defendant's right to be sued in his or her own county of residence. Moreover, the Legislature never intended an interpretation of the venue statutes that would allow a resident defendant to be sued in the plaintiff's county of residence simply because a non-resident defendant, be it an individual, a corporation, or an insurance company, is joined in the same suit. Again, if the Legislature had intended to carve out an exception for foreign insurance companies in an action that involved both resident defendants and one or more foreign insurance companies, the language of the insurance statute, § 11-11-7, would have explicitly stated the exception and made it a mandatory requirement to achieve proper venue. It was only after our decision in Senatobia Community Hospital v. Orr, 607 So.2d 1224 (Miss.1992), that the practice of joining non-residents in suits against residents, then commencing the suit in the plaintiff's county of residence, began in Mississippi. Granted Orr dealt with Miss.Code Ann. § 11-11-11, whereas this case concerns § 11-11-7, nevertheless, the reasoning and logic is analogous to the case sub judice.
¶ 33. In Orr, plaintiffs who lived in Tunica County sued a hospital and doctors in a wrongful death malpractice case. The cause of action accrued in Tate County, and all defendants resided in Tate County at that time. The suit was brought in Tunica County Circuit Court. At the time that the suit was filed, one of the doctors had moved to Louisiana and was therefore a non-resident of Mississippi. The circuit court denied the defendants' motion for change in venue to Tate County.
¶ 34. Whether venue was proper in Tunica County rather than Tate County was an issue of first impression for this Court in Orr. At the core of the issue were two statutes: the general venue statute, Miss.Code Ann. § 11-11-3 (1999), and the non-resident venue statute, Miss.Code Ann. § 11-11-11 (repealed 2003), and they were described in Orr as competing rather than complementary laws:
For their position that the venue in this action is Tate County rather than Tunica County, the appellants rely upon *516 Miss.Code Ann. § 11-11-3 (Supp.1992) which provides:
Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue ... If a civil action is brought in an improper county, such action may be transferred to the proper county pursuant to section 11-11-17.
On the contrary, the appellees rely upon Miss.Code Ann. § 11-11-11 (1972) which provides:

All civil actions for the recovery of damages brought against a nonresident or the representative of the nonresident in the state of Mississippi may be commenced in the county in which the action accrued or where the plaintiff then resides or is domiciled, except as otherwise provided by law.
(emphasis added). The appellees also cite M.R.C.P. Rule 82(c). In Blackledge v. Scott, 530 So.2d 1363 (Miss.1988), the Court held that "[i]n suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants." Id. at 1365.
Orr, 607 So.2d at 1226. Without further discussion, the Court then stated:
The question is elementary that where there are multiple defendants and they live in different counties, venue is proper in the county where one of the defendants resides. Likewise, if one of the defendants is a nonresident of the State, the plaintiff may bring suit against the nonresident in the county of plaintiff's residence. Jurisdiction and venue of that nonresident defendant makes the county of plaintiff's residence the proper venue against all resident defendants, even though they may live in different counties. Mississippi cases on this question are few, evidently because of the clarity of the statutes and the simplicity of the question.
Id. (emphasis added). There were no Mississippi cases cited, and there was no discussion of the right of a defendant to be sued in his (or a co-defendant's) county of residence, a right that had been enjoyed until that time. Interestingly, a Westlaw search shows that no subsequent case has ever cited Orr as authority on a venue question. However the concept that M.R.C.P. 82(c) allows a plaintiff to establish venue in his own county of residence when resident and non-resident defendants are joined in the same suit has been cited on numerous occasions. See Boston v. Hartford Acc. & Indem. Co., 822 So.2d 239 (Miss.2002); Ill. Cent. R.R. v. Travis, 808 So.2d 928 (Miss.2002); American Bankers Ins. Co. of Florida v. Alexander, 818 So.2d 1073 (Miss.2001); McDonald v. Holmes, 595 So.2d 434 (Miss.1992).
¶ 35. We find that the statutes have been wrongly interpreted under rules of statutory construction to allow this situation. The general venue statute, section 11-11-3 is mandatory: "Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant or any of them may be found or in the county where the cause of action may occur or accrue...." Miss.Code Ann. § 11-11-3. By contrast, the insurance company venue statute is permissive: "Actions against insurance companies ... may be brought in any county in which a loss may occur...." Miss.Code Ann. § 11-11-7. Thus, where there is a resident defendant, the general venue statute "shall" apply; and where there is no resident defendant, the insurance company venue statute offers the plaintiff other options.
¶ 36. The additional option of suing in the plaintiff's home county is not available *517 to a plaintiff when a resident defendant is sued. This logical conclusion has the effect of ranking the general venue statute above the other venue statutes in circumstances where more than one may apply. Cf. Missouri Pac. R.R. v. Tircuit, 554 So.2d 878, 881 (Miss.1989) ("But because the railroad venue statute [Miss.Code Ann. § 11-11-5] employs the permissive `may' and because the general venue statute provides that, `except where otherwise provided,' actions `shall' be commenced in one of the counties authorized, we have no authority to ignore the latter."). In Orr this Court incorrectly presumed that there was no ranking of the statutes and thus did not discuss the possibility. We find today that the reasoning in Orr is flawed; and therefore, it is overruled.
¶ 37. The argument that Rule 82(c) was never intended to allow this situation is even more convincing. The Comment to Rule 82(c), prior to the recent changes, stated that the rule "tracks prior Mississippi law" in situations where several defendants are involved, providing that the action may be brought in any court where any one of the claims could have been brought and that venue would be good as to all defendants. The comment then referenced supporting law for this contention, which included Miss.Code Ann. § 11-11-3 and two cases: Gillard v. Great Southern Mortgage & Loan Corp., 354 So.2d 794 (Miss.1978) and Wofford v. Cities Service Oil Co., 236 So.2d 743 (Miss.1970). Each of these supporting authorities concerns the situation in which multiple resident defendants are joined in a single suit. None concerns the situation where a resident and a non-resident defendant (individual, corporation, or insurance company) are joined in the same trial. Thus, Rule 82(c) does not support a plaintiff establishing venue in his own county of residence when a resident defendant is a party to the suit. We, thus, overrule any contrary language in McDonald, American Bankers, Travis, and Boston, which are in conflict with this opinion.
¶ 38. Here, plaintiff Boots Smith is a Jones County, Mississippi resident, corporation. Defendant Wicker Logging is a Newton County resident, and Defendant Capital City is a foreign insurance company. Because there is a resident defendant, Wicker Logging, venue is proper only in a county where the defendant or any of them may be found or in the county where the cause of action may occur or accrue...." In this case venue is proper in Newton County where the resident defendant lives, or Scott County where the cause of action occurred. Thus, the circuit court abused its discretion in denying a change of venue.

CONCLUSION
¶ 39. For the foregoing reasons, we reverse the judgment in favor of Boots Smith, and we remand this case to the Jones County Circuit Court with directions that it transfer venue in this case to the circuit court of either Newton County or Scott County where a new bifurcated trial on the issues of liability and insurance coverage under the policy will be held consistent with this opinion.
¶ 40. REVERSED AND REMANDED.
SMITH, C.J., COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. WALLER, P.J., CONCURS IN RESULT ONLY. DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.
NOTES
[1] This issue is not before this Court on appeal.
[2] Boots Smith was represented in trial court by Harold Melvin. However, on appeal Boots Smith is represented by Brett W. Robinson and Christopher B. McDaniel.
[3] The court papers indicate that the motion for declaratory judgment only was filed approximately two weeks before trial on April 3, 2002.
[4] This same lawsuit filed today would, of course, yield a different venue result as Miss.Code Ann. § 11-11-7 is now repealed and Miss.Code Ann. § 11-11-3 has been modified.