# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-02524-SCT

*AMERICAN HOME PRODUCTS CORPORATION;
WYETH-AYERST LABORATORIES COMPANY, A
DIVISION OF AMERICAN HOME PRODUCTS
CORPORATION; AND A. H. ROBINS COMPANY,
INCORPORATED*

*v.*

*MYRA SUMLIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2004 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM M. GAGE |
| | KENNETH W. BARTON |
| | LEANN W. NEALEY |
| | ROBERT D. GHOLSON |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. COUCH |
| | RICHARD JOSEPH LAJAUNIE |
| | THOMAS Q. BRAME, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED -11/16/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., DIAZ AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case comes to this Court on appeal from the Circuit Court of Smith County,
Mississippi, by A.H. Robins Company, Incorporated, American Home Products Corporation,
and Wyeth-Ayerst Laboratories Company ("Wyeth").[1]     In this pharmaceutical liability case,

_____

[1] According to Wyeth, on August 3, 1998, A.H. Robins Company, Incorporated, was
merged into American Home Products Corporation, and ceased to exist as a separate entity.

plaintiff Myra Sumlin asserts a claim of heart valve regurgitation purportedly caused by Redux, a diet drug formerly marketed by Wyeth. Wyeth seeks review of the trial court's analysis of Sumlin's eligibility to opt out of a Nationwide Class Action Settlement ("CAS"). Moreover, Wyeth seeks review of the trial court's order denying Wyeth's motion to transfer venue.

¶2. We hold that the trial court erred in not transferring venue to the Circuit Court of Wayne County, and we reverse and remand for transfer of venue to that court. We decline to address Issues II and III.

### FACTS AND PROCEDURAL HISTORY

¶3. Prior to 1997, approximately six million people ingested the diet drugs Pondimin and/or Redux, which are also known as fen-phen. *Brown v. Am. Home Prods. Corp.*, 2006 WL 572691, at *1 (E.D. Pa. March 8, 2006). The same year, these drugs were removed from the market after evidence surfaced that the drugs could cause inter alia, valvular heart disease. *Id*. The type of valvular heart disease at issue here is valvular regurgitation, which involves the reverse flow of blood through defective heart valves. *Id*. After a wave of litigation following the removal of the diet drugs from the market, the United States District Court of the Eastern District of Pennsylvania approved a Class Action Settlement Agreement. *Id.*

¶4. Under the CAS, class members could initially opt out or remain in the class. Should members choose to remain in the class, the CAS also provided "downstream" opt-out rights, which would allow class members to sue Wyeth in state or federal court. These opt-out

On March 11, 2002, American Home Products Corporation changed its name to Wyeth. Additionally, on June 30, 2001, Wyeth-Ayerst Laboratories Company was merged into American Home Products Subsidiary Holding Corporation and ceased to exist as a separate entity.

2

provisions included an intermediate opt-out. However, in order to exercise intermediate opt-out rights, class members had to be medically eligible under specific parameters as set forth in the CAS.

¶5. The CAS, among other factors, requires class members who exercise intermediate opt-out rights to have been diagnosed by a "qualified physician as FDA Positive by an Echocardiogram." Echocardiography is ultrasound technology used to produce an image (echocardiogram) of the heart and the flow of blood through it. The CAS defines "FDA Positive" by specifying both the qualitative and quantitative standards for evaluating the echocardiogram used to diagnose regurgitation. Qualitatively, the CAS mandates the echocardiogram must be performed and evaluated by qualified medical personnel following the protocol as outlined by certain texts.[2] Quantitatively, class members claiming mitral valve regurgitation are eligible to opt-out only if diagnosed with moderate or greater mitral regurgitation based on specified echocardiogram views. Specifically, "moderate or greater regurgitation" is defined as "regurgitant jet area in any apical view equal to or greater than twenty percent (20%) of the left atrial area."

¶6. Sumlin filed suit against Wyeth in October of 2002, pursuing a claim against Wyeth as an "Intermediate Opt-Out" from the CAS. Less than a month later, Wyeth filed a motion to dismiss Sumlin's complaint, arguing Sumlin failed to meet the opt-out requirements as delineated by the CAS.

---

[2] Harvey Feigenbaum, Echocardiography (5th ed. 1994) ("Feigenbaum"); Arthur E. Weyman, Principles and Practice of Echocardiography (2d ed. 1994) ("Weyman").

¶7.    In December of 2004, the trial court held a hearing where both Sumlin and Wyeth presented expert opinions as to whether Sumlin's echocardiogram was performed in compliance with the CAS requirements.  The trial court also heard testimony as to whether venue should be transferred from Smith County to Wayne County.  The trial court denied Wyeth's motion to dismiss, Wyeth's motion to transfer venue, as well as Wyeth's motion for reconsideration.  In his order denying Wyeth's motion to dismiss, the circuit judge based his decision on Mississippi Rule of Civil Procedure 56 summary judgment standard and also found the issue of whether Sumlin's echocardiogram was "FDA Positive" was a fact issue for the jury's determination.  Wyeth subsequently filed a petition for interlocutory appeal, which this Court granted.  See M.R.A.P. 5.  Wyeth's assertions of error are set forth below.

## ISSUES

I.      **WHETHER THE TRIAL COURT ERRED IN DENYING A CHANGE OF VENUE IN LIGHT OF THE CLEAR PRECEDENT OF *CAPITAL CITY INS. CO. v. G.B. "BOOTS' SMITH CORP.* AND ITS PROGENY.**

II.     **WHETHER THE TRIAL COURT VIOLATED WYETH'S RIGHT UNDER THE CAS TO HAVE SUMLIN'S ELIGIBILITY DETERMINED BY THE COURT AS A THRESHOLD MATTER.**

III.    **WHETHER THE TRIAL COURT IMPROPERLY DELEGATED TO THE JURY ITS GATEKEEPING FUNCTION UNDER *DAUBERT* AND MISS. R. EVID. 104 AND 702.**

## STANDARD OF REVIEW

¶8.    With regard to Wyeth's motion to transfer venue, the abuse of discretion standard applies.  *Capital City Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505, 513 (Miss. 2004).  "This Court will not disturb a trial judge's ruling on appeal 'unless it clearly appears

that there has been an abuse of discretion or that the discretion had not been justly and properly exercised under circumstances of the case." *Id*. (quoting *Guice v. Miss. Life Ins. Co.*, 836 So. 2d 756, 758 (Miss. 2003)).

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN DENYING A CHANGE OF VENUE IN LIGHT OF THE CLEAR PRECEDENT OF *CAPITAL CITY INS. CO. v. G.B. "BOOTS' SMITH CORP.* AND ITS PROGENY.

¶9.    Wyeth asserts the trial court erred when it denied its motion to transfer venue.   First, Wyeth asserts venue is improper in Smith County because the controlling venue statute is Miss. Code Ann. Section 11-11-3,[3]   not Miss. Code Ann. Section 11-11-11.   As such, section 11-11-11's clause which allows venue where a plaintiff resides or is domiciled, is inapplicable.[4]    Secondly, Wyeth argues venue in Smith County is improper because under section 11-11-3, Sumlin's complaint names a Mississippi resident defendant,[5] and Sumlin's claim did not occur or accrue in Smith County.   "Of right, the plaintiff selects among the permissible venues, and his choice must be sustained unless in the end there is no factual basis for the claim of venue." *Forrest County Gen. Hosp. v Conway*, 700 So. 2d 324, 326 (Miss.

---

[3] Sumlin filed her complaint in October of 2002.   Therefore, the amendments to the venue statute which went into effect on January 1, 2003, are not applicable to this case. *See* 2002 Miss. Laws, 3rd Ex. Sess., ch. 2, § 1, eff. January 1, 2003; 2002 Miss. Laws, 3rd Ex. Sess., ch. 4, § 1, eff. January 1, 2003).

[4] Sumlin does dispute Wyeth's first argument.

[5] Dr. Steve Morris, who purportedly prescribed Redux to Sumlin, is the only resident defendant in this case.

1997) (quoting ***Flight Line, Inc. v. Tanksley***, 608 So. 2d 1149, 1155 (Miss. 1992) (footnote omitted)).

¶10.    First, Wyeth argues that under ***Capital City Ins. Co. v. G.B. "Boots" Smith Corp.***, 889 So. 2d 505 (Miss. 2004), proper venue lies in Wayne County. There, this Court addressed the applicability of competing venue statutes, Miss. Code Ann. Sections 11-11-3,[6] our general venue statute, and 11-11-7,[7] our venue statute governing suits against insurance companies. ***Id***. at 513.   We held that between the mandatory "shall" language in section 11-11-3, and the permissive "may" language in section 11-11-7, section 11-11-3 controlled.[8]   ***Id***. at 516-17. Similarly, Wyeth argues section 11-11-3, as codified in 2002, is controlling over Miss. Code

---

[6] Miss. Code. Ann. Section 11-11-3 (Supp. 2001), in pertinent part, states "[c]ivil actions of which the circuit court has original jurisdiction ***shall*** be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue . . . ." (Emphasis added).

[7] Miss. Code Ann. Section 11-11-7 (1972) states: Action against insurance companies, groups of insurance companies or an insurance association ***may*** be brought in any county in which a loss may occur, or, if on a life policy, in the county in which the beneficiary resides, and process may be sent to any county, to be served as directed by law.  Such actions may also be brought in the county where the principal place of business of such corporation or company may be.  In case of a foreign corporation or company, such actions ***may*** be brought in the county where service of process may be had on an agent of such corporation or company or service or process in any suit or action, or any other legal process, may be served upon the insurance commissioner of the state of Mississippi, and such notice will confer jurisdiction on any court in any county in the state where the suit is filed, provided the suit is brought in the county where the loss occurred, or in the county in which the plaintiff resides. (Emphasis added) (repealed during 2002 legislative session).

[8] The ***Capital City*** decision dealt with section 11-11-3 before it was amended in 2002, and with section 11-11-7 before it was repealed during the 2002 legislative session. *See* 2002 Miss. Laws, 3rd Ex. Sess., ch. 4, § 2, eff. January 1, 2003.

Ann. Section 11-11-11,[9] Mississippi's venue statute concerning suits against foreign residents, because section 11-11-11 also uses the permissive "may" language. As such, Wyeth argues the clause in section 11-11-11 allowing a civil action to be commenced "where the plaintiff resides or is domiciled" is inapplicable, and thus venue is Smith County is improper.[10]

¶11.    We agree.  In *Capital City*, this Court cited to *Senatobia Community Hospital v. Orr*, 607 So. 2d 1224 (Miss. 1992), where this Court decided whether section 11-11-3 or 11-11-11 controlled.  889 So. 2d at 515-17.  Applying both statutes, we held jurisdiction and venue of a nonresident defendant made the county of the plaintiff's residence the proper venue against all resident defendants, even thought they lived in different counties.  *Id*. at 516.  This Court overruled *Orr*, finding the *Orr* reasoning was flawed and that the *Orr* Court "incorrectly presumed that there was no ranking of the statutes and thus did not discuss the possibility."  *Id*. at 517.  Although this Court handed down the *Capital City* decision after Sumlin filed her suit, our case law is clear that *Capital City* applies retroactively, as Sumlin's case was ongoing when *Capital City* was decided.  *See Thompson v. City of Vicksburg*, 813 So. 2d 717, 721 (Miss. 2002) (retroactive application of judicially articulated rulings applies to cases awaiting trial); see *Anderson v. Anderson*, 692 So. 2d 65, 70 (Miss. 1997) (changes in the law applied retroactively to the case pending review on appeal).

---

[9] Miss. Code Ann. Section 11-11-11 (1972), stated "[a]ll civil actions for the recovery of damages brought against a nonresident or the representative of the nonresident in the state of Mississippi *may* be commenced in the county in which the action accrued or where the plaintiff then resides or is domiciled, except as otherwise provided by law." (Emphasis added).

[10] As Sumlin's case was filed prior to the amendment to section 11-11-3 before it was amended, as well as the repeal of 11-11-11, the statutes apply as written in 2002.

¶12. Second, Wyeth also argues venue is improper in Smith County under section 11-11-3 because Sumlin's claim neither occurred nor accrued in Smith County. In ***Braswell v. T & T Welding, Inc.***, 883 So. 2d 82, 84 (Miss. 2004), this Court discussed the meaning of the "occur or accrue" language in section 11-11-3:

> "Occur" and "accrue" are not synonymous, legally or otherwise, as the disjunctive connector forthrightly suggests. *We read accrual in its formalistic sense. A cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. Forman v. Mississippi Publishers Corp.*, 195 Miss. 90, 104, 14 So. 2d 344, 346 (1943). This may well mean the moment injury is inflicted, that point in space and time when the last legally significant fact is found. *"Occur" is a less formalistic term*. It is event oriented to its core. It connotes conduct and phenomena and imports no preference among all of those necessary that a plaintiff may sue. In the final analysis, *venue is about convenience*. The legislative prescription implies a legislative finding counties meeting certain criteria will generally be more convenient to the parties. The use of "occur" makes sense because important witnesses will often be accessible where the action occurs. *Yet, there is nothing in the phrase "where the cause of action may occur…." that limits the judicial search for but a single county*. Torts arise from breaches of duties causing injuries, and it is common experience that breach and causation and impact do not always happen at once. At the very least, the word *"occur" connotes each county in which a substantial component of the claim takes place*, and this may include, in the present context, the negligent conduct which undergirds [the plaintiff's] claim.

(emphasis in original) (citing ***Flight Line, Inc. v. Tanksley***, 608 So. 2d 1149, 1156-57 (Miss.1992)).

¶13. Wyeth argues Sumlin's alleged injuries accrued in Wayne County, because Sumlin lived in Wayne County at that time, as well as received, filled, and took her Redux prescriptions in Wayne County. On the other hand, Sumlin argues her claims accrued in Smith County because she was a resident of Smith County when her echocardiogram was performed. Sumlin argues her echocardiogram upon which her suit is based was "that point in space and time when the last

8

legally significant fact [was] found." *See* ***Flight Line***, 608 So. 2d at 1156. Sumlin also asserts venue is proper in Smith County because her claims of emotional distress and psychological pain and suffering accrued during her Smith County residency.

¶14. We disagree. Sumlin fails to consider the last part of the ***T & T Welding*** discussion, that "at the very least, the word 'occur' connotes each county in which a substantial component of the claim takes place." As Wyeth points out, Wayne County was the point of origin of Sumlin's claim. Sumlin neither obtained a prescription for Redux, filled the prescription, nor ingested the pills in any other county but Wayne County. We find that the performance and interpretation of an echocardiogram, alone, is not sufficient so as to constitute a "substantial component" of this claim.[11] *Compare* ***Forrest County Gen. Hosp.***, 700 So. 2d at 327 (In a medical malpractice suit, damage occurred or accrued in county where child was misdiagnosed, not in county where child subsequently received treatment and care.), *with* ***T & T Welding***, 883 So. 2d at 85 (In an open accounts suit, the cause of action occurred or accrued in a county where orders were placed, workers were dispatched based, charges were incurred, and where payment normally was made), and ***Williamson v. Edmonds***, 880 So. 2d 310, (Miss. 2004) (In a breach of contract, duty of loyalty, and duty of care case, cause of action occurred or accrued in a county where defendant made in-person contact with the plaintiff, and where plaintiff received defendant's telephone calls and correspondence). Likewise, any emotional

---

[11] Sumlin's argument presents some concern because as Judge Bartle discussed in ***Brown v. Am. Home Prods. Corp.***, 2006 WL 572691 at *1 (E.D. Pa. March 8, 2006), a diagnosis as to the existence of valvular heart disease and any extent of regurgitation can be diagnosed shortly after discontinuing the diet drug use. Thus, where Sumlin underwent an echocardiogram is of little importance.

distress or psychological pain resulting from the findings of an echocardiogram does not constitute a substantial component of the claim.[12]

## CONCLUSION

¶15.    This Court finds Sumlin's alleged injury did not occur or accrue in Smith County. Thus, the ruling of the trial judge on Wyeth's change of venue motion is reversed and this case is remanded to the trial court with instructions to transfer venue to Wayne County Circuit Court.

¶16.    **REVERSED AND REMANDED.**

**WALLER AND COBB, P.JJ., DIAZ, EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.   GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

---

[12] Moreover, Sumlin's echocardiogram that is the subject of this suit, and based upon which she asserts her claim of emotional distress and psychological pain and suffering stems, was performed in December of 2002, *after* Sumlin filed suit in October of 2002.